## MOORE v. LIST & WEATHERLY CONST. CO. et al.*

### No. 4396.

Court of Appeal of Louisiana. Second Circuit.

Nov. 10, 1932.

Barnette & Roberts, of Shreveport, for appellants.

Wm. C. Boone, of Homer, for appellee.

PALMER, J.

This is an action to recover compensation under the Employers' Liability Act (Act No. 20 of 1914 and amendments thereto). The defendant List & Weatherly Construction Company is engaged in constructing a traffic bridge over Red river at Shreveport and, in connection with that undertaking, employs various kinds of labor.

The defendant Union Indemnity Company carried liability insurance for the said construction company and is sued in solido with the said construction company on the cause of action set forth by plaintiff.

In the construction of this bridge, it was necessary to sink piers to support the bridge in the bed of the river. In sinking these piers, barrel-like tubes fifty or more feet in diameter are set up in the water and the water is pumped out so the men can go in to work. The sand is then pumped out to the proper depth in order to clear the foundation for the pier. The laborers who carry on this work are called "sand hogs." In order to do this work, it is necessary for them to scrape out the sand and dirt with their hands and feed it to the pump.

About December 7, 1931, plaintiff, while engaged in this work, brought his left hand in contact with a hard substance which cut him in the palm of his hand, about one inch back from the middle finger, severing the flexor tendon. Plaintiff alleges that on account of this injury he has a useless middle finger on his left hand, and that his left hand has become weakened and impaired, and that he is continually worried with pain extending all up and down his left arm. He alleges that he has lost the use of his left hand as a result of these injuries.

Plaintiff further alleges that he was earning at the time of his injuries $4 per day, for seven days per week, or $28 per week, and that he is entitled to compensation for 150 weeks, making a total of $2,730, payable at the rate of $18.20 per week, beginning on or about the 7th of December, 1931. He avers that he has already received $91 as a credit on this amount.

The defendants admit plaintiff's alleged employment, but they deny that he received his injuries as alleged. That is, they deny that plaintiff received his injuries while at work for defendant in the course of his employment.

The district judge awarded plaintiff judgment in the sum of $18.20 per week during the period of disability, "not, however, to exceed 150 weeks, beginning December 2, 1931, and continuing from week to week until the whole thereof is paid or the disability removed, with five per cent per annum interest on each payment after due, less a credit of $91.00 paid for five weeks' disability."

The lower court further ordered that the fee of the attorney for plaintiff be fixed at 20 per cent. of the amount of compensation to be paid and that the attorney have a lien on the judgment for his fee. The fees of the two medical experts were further fixed at $25 each.

The district judge further ordered that in the event defendants should offer to have plaintiff's hand operated on at their expense at a cost not to exceed $250, and if the offer should be refused by plaintiff, thereupon the payment of compensation shall cease at the end of sixteen weeks after the offer is made.

From this judgment, defendants prosecute this appeal and plaintiff has answered the appeal praying that the judgment of the lower court be sustained, in so far as the same allows him compensation at $18.20 per week for the period of 150 weeks, but that the judgment be reversed in so far as it attempts to require him to submit to an operation, etc.

Opinion.

On the trial defendants offered some evidence tending to disprove plaintiff's claim that his injury was received as alleged, but in oral argument, as well as in brief, they have abandoned that contention. On this point, we quote from their brief as follows:

"Defendant resisted plaintiff's demand first on the ground that plaintiff did not receive the injury complained of while he was at work for List & Weatherly Construction Company, one of the defendants. On this point, the evidence is conflicting, but the trial Judge has found for the plaintiff on this point and defendants are not urging this point before this Court. The only question is, what compensation plaintiff is entitled to receive."

The necessity, therefore, of discussing and analyzing the testimony bearing upon this point is obviated, for, as counsel for defendants say, "the only question is what compensation plaintiff is entitled to receive."

Plaintiff contends that the injury complained of is a hand injury and that the injury constitutes a permanent total loss of the use of function of the hand, and that, accordingly, he is entitled, at the wages he was drawing, to $18.20 per week for a total of 150 weeks; while, on the other hand, defendants contend that plaintiff's injury consisted at most in the loss of the use of function of the middle finger on the left hand, for which plaintiff is entitled to recover, at the greatest, the sum of $18.20 for a period of 20 weeks. It is therefore necessary for the court to determine which of these two positions the evidence in the case sustains.

Plaintiff testified that at the time of trial his injury still pained him; in fact, he testified that the pain extended not only through the hand, but at times to the shoulder also. He further testified that at different times his hand has but little feeling in it.

There were two physicians called as witnesses in the case: One, Dr. G. H. Cassity, by the plaintiff; and the other, Dr. T. J. Smith, by the defendant. We find no particular difference in the character of their testimony. Dr. Cassity testified that from his examination he found a scar on plaintiff's left hand about one inch below the base of the left middle finger; that the scar is across the tendon, controlling the middle finger; and that from all appearances the tendon was cut. He says that plaintiff could not close his middle finger nor straighten it. He further testified that plaintiff's grip in the injured hand is diminished and that the extent of the loss of function is probably permanent, without surgical repairs. Dr. Cassity further testified that the injured tendon in its present condition causes a marked loss of function of the left hand.

Further testifying, Dr. Cassity says that the finger, with the severed tendon, gives plaintiff a weaker grip and less function of the hand than he would have if the finger was amputated:

"Q. Now, with the finger there, what percentage of strength would the individual have, or do you think he would have in his left hand? A. Well, if he had the middle finger entirely removed, the function in the hand would be about eighty per cent, that is to say, the loss of one finger, the middle finger probably would not be over seventy per cent if he had the middle finger entirely removed, but with the finger in its present condition, it really interferes with proper closing of the other fingers, his function is possibly not over fifty per cent.

"Q. Do you think he could do manual labor with that hand? A. He could do some, however, it would be painful, any manual labor that would cause him to grip, like grip a hoe handle or spade, will cause him pain, any time one finger will not come down properly in the hand causes pain—

"Q. Would he be in position to use his hand as an ordinary laborer or do work to hold down a job? A. No, he would not.

"Q. You think in his present condition he would not be able to perform such work as an able and capable man of holding down a job? A. I think not.

"Q. Do you know whether or not there is any pain there in the hand on account of the injury? A. I think if he attempts to use the hand for any length of time at labor then I think he would have pain in the hand, and possibly the arm.

"Q. Do you think it would swell up again by use? A. Well, there might be some swelling if he persisted in using it enough.

"Q. He would not be able to use that hand on account of the pain it caused him? A. Probably not."

Dr. T. J. Smith, of the North Louisiana Sanitarium, testified in effect that he treated plaintiff at the sanitarium shortly after his injury, about one week. He said he found a severance of the tendon of the distal phalanx on the left-hand middle finger; that at the time the injury was infected with a low-grade infection, and, for that reason, the tendon was not repaired. That he confined his treatment to the work of getting the infection out, and intended later to repair the tendon, but that he was instructed to discontinue the treatment before he made the repairs. He was of the opinion that the tendon could be repaired successfully, after which plaintiff would have good use of his finger, but that it would take about four months from the time of the operation for plaintiff to recover. Dr. Smith was then asked the question:

"Q. Then you figure he would be for all practical purposes as good as ever? A. Provided it turned out as we expect. * * *

"Q. And you would expect it to turn out? A. Yes, as Dr. Cassity said, if it would be choice of two things to do I would give him the chance of keeping his finger, I would not cut it off if he came to me— "

He was then asked:

"Q. The only disability he has is that severed tendon? A. There is some adhesion about the tendon, over the joint, those adhesions have developed of course since the infection, when I first saw him it was very easy to determine that tendon was not severed, that deep tendon was not cut—

"Q. The tendon that was cut— A. Is the superficial tendon at that point—

"Q. The other was not cut? A. It was not cut."

Dr. Smith did not specifically discuss the question of pain in the hand, nor did he specifically discuss the question of injury to the hand. There is no dispute, however, over the fact that the cut was in the hand proper. Dr. Smith further testified as follows:

"Doctor, this tendon that had been cut, to about what place in the hand had the tendon been cut? A. About an inch from the base of the middle left finger in the palm aspect of the hand.

"Q. Now, was it a long cut across there or was it a small cut? A. It was about three-quarters of an inch long, irregular and jagged, I would say it was, done with a blunt, some blunt instrument, it was not a clear-cut incision.".

It will be observed that it is not disputed that the tendon in the palm of the hand was severed about an inch from the base of the middle finger. Thus we have this situation: Plaintiff's injury was inflicted in the palm of his hand about an inch from the base of the middle finger at the point where the tendon was severed. It is that severed tendon that now is giving him the trouble. True enough, it produces a noticeable effect on the middle finger; however, the injury itself is not upon that finger, but is in the palm of the hand. Evidently, the severed tendon produces at least a part of the pain from which plaintiff says he suffers, and certainly if the tendon is ever repaired, it would require an operation in the palm of the hand.

We think the facts clearly show that this is a hand, rather than a finger, injury, although the finger is involved. True enough, the doctors are of the opinion that the chances largely favor a full recovery, if the plaintiff would submit to a surgical operation; but the law does not require him to do that. The outcome of any surgical operation cannot be determined until after the chances incident to it are taken. In every such operation there are some risks, and in such cases as we are now considering, it is within the discretion of the injured party whether or not he cares to take such a chance.

Paragraph 15 of subdivision d, section 8 of the Workmen's Compensation Act (Act No. 242 of 1928, p. 357) in effect provides that in all cases involving permanent partial loss of the use of function of a member, compensation shall bear such proportion to the amount allowed for the total loss of the member as the disability to such member bears to the total loss of the member, provided that in no cause shall compensation exceed that provided in the act for the loss of such member. In other words, in this case, if plaintiff suffered a permanent total loss of the use of function of his left hand, bearing in mind the wages he was receiving, he would be entitled to $18.20 for 150 weeks (section 8, par. 5, subd. d, of Employers' Liability Act). But in this case, the medical testimony—that is, such as bears upon this point—discloses that plaintiff's disability to his left hand is about 50 per cent. Accepting that as the criterion for allowing compensation in this case, we find that plaintiff would be entitled to $9.10 per week, for a total of 150 weeks, beginning December 7, 1931, with 5 per cent. per annum interest on each payment after due, subject to a credit of $91, previously paid for five weeks' disability.

The judgment of the lower court is therefore amended, and it is now ordered, adjudged, and decreed that plaintiff have and recover judgment of the defendants in solido for the sum of $9.10 per week for a period of 150 weeks, beginning December 7, 1931, with 5 per cent. per annum interest on each payment after due, less a credit of $91 previously paid, covering five weeks' disability;

It is further ordered, adjudged, and decreed that the fee of the attorney for plaintiff be and it is hereby fixed at 20 per cent. of the amount of compensation to be paid plaintiff and that he have a lien on said judgment for his fee;

It is further ordered, adjudged, and decreed that the fees of the medical experts, Dr. G. H. Cassity and Dr. T. J. Smith, be and they are hereby fixed at $25 each, and taxed as part of the costs in this case;

It is further ordered, adjudged, and decreed that defendants pay all costs of this suit.