86 So.2d 727 (1955)
Jeff CUMMINGS, Plaintiff-Appellee,
v.
Harry J. ALBERT et al., Defendants-Appellants.
No. 4155.
Court of Appeal of Louisiana, First Circuit.
March 20, 1955.
Rehearing Denied April 27, 1956.
*728 Bienvenu & Culver, New Orleans, for appellants.
Arnold J. Gibbs, Lawrence A. Uter, Durrett & Hardin, Wallace A. Hunter, Baton Rouge, for appellee.
TATE, Judge.
Harry J. Albert, employer, and the Houston Fire & Casualty Co., his compensation insurer, appeal from an award of total and permanent workmen's compensation benefits to an injured employee, Jeff Cummings. Plaintiff answers the appeal, requesting the additional award of penalties and attorneys fees for arbitrary failure to pay compensation when due.
The principal issues of this appeal relate to (a) the extent of disability, (b) the liability of the insurer to the employee under an "additional medical payments clause" in the policy issued to the employer for medical expenses in excess of the statutory maximum, and (c) the liability of the insurer for attorney's fees and penalties for allegedly arbitrary refusal to pay compensation when due.
(1) Disability.
Plaintiff Cummings was employed as a plasterer's helper. His duties included heavy lifting, bending, and climbing and involved, inter alia, carrying cement sacks, loading and unloading, and erecting scaffolding. While at work on May 2, 1952, Cummings fell four floors down an open elevator shaft. His most serious injuries were a broken back and a badly broken arm. In medical terminology, he suffered numerous fractures (including compression, comminuted, *729 and compound) of the spine (five vertebrae), left arm, and ribs. Cummings was hospitalized for six weeks and confined to bed at home approximately two months more.
We see little advantage in detailed discussion of the medical evidence, excellently analyzed and reviewed by the District Court in its written opinion. We agree with the analysis and conclusions therein. All doctors testifying found residual disability. Defendants urge that this medical testimony shows Cummings entitled to further compensation only on the basis of 20% loss of function of the arm and 10% loss of function of the back, rather than on the basis of total and permanent disability as allowed. That is, defendants argue that Cummings is instead entitled to compensation only at a maximum weekly rate of $9.93 under the specific disability and the loss of function provisions of the Compensation Act, LSA-R.S. 23:1221(4), subsections (o) and (p); limited to the number of weeks therein provided.
The record preponderantly shows that as result of the serious injuries sustained in the accident and the prolonged immobilization in a cast thereafter, Cummings is presently disabled from doing heavy work, lifting, or extensive bending. For instance, Dr. I. L. George, orthopedist called by plaintiff, testified to a 50% loss of flexion of the spine; Dr. William Moody, general practitioner, testified to a 25-30% total disability of the body; and Dr. C. H. Mosely, surgeon called by defendants, supports their finding that as of date of trial due to limitations of motion in the back, arm, and shoulder, Cummings was able at most to perform only light duties and was unable to work without pain.
As Judge Dore stated in Estilette v. United States Fidelity and Guaranty Company, La.App. 1 Cir., 64 So.2d 878, at page 880: "Our compensation law has never required that a man be completely helpless before he can be adjudged totally and permanently disabled. The criterion is whether he can go back to the same job or to a job similar to what he was doing before. * * * It is obvious as we view plaintiff's condition that he could not now hire himself out to do the work he was doing in 1950 [time of injury], because he is not physically able to do it. * * * It is well established in our jurisprudence that an employee whose injuries prevent him from performing his customary and usual duties without suffering pain, hardship and discomfort is totally disabled within the meaning of the compensation act."
Such cases as Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695; Fruge v. Pacific Employers Ins. Co., La.App. 1 Cir., 71 So.2d 625, affirmed as to other grounds 226 La. 530, 76 So.2d 719; Strother v. Standard Accident Ins. Co., La.App. 1 Cir., 63 So.2d 484; Fontenot v. Goldenstern Pipe & Supply Co., Scott v. Fulton Bag & Cotton Mills, La. App., 65 So.2d 397, hold that where an employee due to the accidental injury is unable to perform substantially the duties formerly performed by him during the employment in which injured, he is totally disabled, despite his ability to earn a living doing other and lighter or less laborious, or less (or more) skilled duties.
Cases relied upon by able counsel for defendant such as Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739; Coon v. Germany Iron Works, La.App., 81 So.2d 83; Loflin v. Erectors & Riggers, Inc., La.App. 1 Cir., 68 So.2d 694; Perry v. Louisiana Central Lumber Co., La.App., 16 So.2d 136; Washington v. Holmes & Barnes, La.App. 1 Cir., 4 So.2d 51, in general do not concern employees unable by industrial accident to perform some or all of the substantial duties of an employment similar to that in which engaged at the time of accident.
As to defendants' related defense based on the testimony of Dr. Mosely, that if Cummings tried light work, his working ability should or might return despite his present residual disability, we stated in Watson v. Floyd Electric Company, Inc., La.App. 1 Cir., 75 So.2d 361, at page 365 (writ denied), rejecting similar contentions:

*730 "The question to be determined is whether or not the plaintiff, at the time he refused to accept light work or the employer refused to give him light work, was able to do and perform the type of work he was doing at the time of the alleged accident."
Or as stated by our brothers of the Second Circuit in Brown v. International Paper Co., La.App., 58 So.2d 557, at page 560:
"Defendant relies largely on the medical testimony of Doctors Hamilton and Rawls, both of whom were of the opinion that plaintiff's condition was such that if he did engage in light work, it would restore full function of his arm within six weeks, and at most, twelve weeks. But the test is not whether a plaintiff in a compensation case is able to do light work, but is whether or not he is able to do the same work he was doing when injured, or similar work, and we are not to speculate on the time it would require for his recovery or in fact whether he would recover at all, especially in the face of the conflicting medical testimony."
2. Medical expense.
Plaintiff bases his claim for recovery of medical expenses incurred by him in excess of the statutory maximum upon a clause in the policy issued by defendant insurer to the employer entitled "Louisiana extra legal medical endorsement."[1]
Concerning such clause to the policy, the able district court stated:
"My first impression of the above quoted endorsement was that it is merely an agreement between the insured and the insurer and that it does not inure to the benefit of the injured employee and that notwithstanding this endorsement a plaintiff workman can recover for medical and hospital expenses no more than permitted by the statute. One of the reasons suggesting this conclusion is that part of the endorsement providing that additional medical and hospital expenses will be paid if in the opinion of the Company the same may be "reasonably necessary etc.',a purely potestative condition; and the other being that the provisions of the statute limiting liability for medical expenses to $1,000.00 only should be applied.
"However, upon further reflection, this question occurs,if the provision is not for the benefit of an injured employee, why have it in the policy at all, and why should an employer pay an extra premium, (which he must do) to have it made a part of the policy contract?
"The second paragraph of the endorsement limits liability to $10,000.00, `on account of each person for whom benefits are payable under paragraph one of this endorsement.'

"This paragraph it seems to me amounts to a stipulation `pour autrui' and was intended to be for the benefit of the third party employee. Therefore, I am of the opinion than an injured workman can avail himself of this provision and recover an amount in excess of the statute if he has by reason of the injuries sustained required and received additional treatment, *731 hospitalization etc." (Italics by District Court.)
Although since this holding, the Orleans Court of Appeal reached a somewhat different conclusion, Smith v. W. Horace Williams Co., La.App., 84 So.2d 223, at page 228, it does not appear to have had brought to its attention the possibility that such agreement might be a stipulation in favor of a third person, Art. 1890, LSA-Civil Code.[2] Further, the insurance "agreement shall be construed to be a direct obligation by the insurer to the person entitled to compensation, enforceable in his name", LSA-R.S. 23:1162; Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695.
We therefore think the District Court herein correctly allowed plaintiff to recover under this excess medical payments clause for "reasonable medical, surgical and hospital services and medicines", LSA-R.S. 23:1203, incurred by him, although in excess of the statutory maximum of $1,000.
As noted, the insurer had already paid the sum of $1,173.20. It is stipulated in the record at Tr-4 that plaintiff had incurred the following medical expenses on his own account:

 Dr. David S. Malen $75.00
 Dr. I. L. George 40.00
 Dr. F. A. Benitez 140.00
 Dr. William M. Moody 75.00

Defendant alternatively urges non-liability for these excess medical expenses because allegedly they were expended not for treatment or care of the plaintiff, but for purposes of preparing this law suit. Employers and their insurers are neither liable for, nor entitled to credit against a statutory or legal medical expense limit, for sums expended for examinations for purposes of litigation, rather than for purposes of treatment, Jones v. Hunsicker, 188 La. 486, 177 So. 576; Chamberlin v. Maryland Casualty Company, La.App. 1 Cir., 75 So.2d 366.
The record indicates that the medical liability of the late Dr. F. A. Benitez in the amount of $140 and that of Dr. Davis S. Malen, x-ray specialist in the amount of $75 were incurred in connection with medical treatment and attention, and not primarily with examination for the purposes of litigation. However, the District Court inadvertently allowed the fees of Dr. I. L. George and Dr. W. M. Moody, who examined plaintiff primarily as medical witnesses; therefore the District Court's award of excess medical expenses will be reduced to $215 total.
3. Penalties and attorneys fees under LSA-R.S. 22:658.
Such penalties and attorneys fees will not be allowed upon excess medical payments above recovered, since the liability of an insurer therefor, not previously litigated, presented a substantial question.
But even accepting the somewhat self-serving testimony of defendant insurer's claims manager that compensation payments were ceased to this crippled employee on December 11, 1953, under a now admittedly mistaken calculation that such payment discharged in full the insurer's liability calculated on a loss of function or specific disability basis,[3] we find in defendants' brief the frank admission that even under its own present calculation it owes the injured employee further compensation in the amount of $1,232.55.
*732 The record reveals that with equally commendable frankness the same concession was made by the defendant in brief filed in the District Court on or about September 1, 1955 (see page 11; "Reasons for Judgment" of District Court, October 17, 1955). Despite this admitted liability for unpaid compensation, the record is devoid of any tender or payment of additional compensation due to the injured employee, and upon argument of this appeal on January 23, 1956, in response to questioning from the bench, counsel for defendant answered that none had been made.
Our Supreme Court has held that when there is no bona fide dispute as to whether compensation is due for disability, and the insurer nevertheless fails to tender the amount due, then such failure to pay compensation is clearly arbitrary, capricious, and without probable cause, subjecting the defendant to penalties under LSA-R.S. 22:658, Fruge v. Pacific Employers Ins. Co., 226 La. 530, 76 So.2d 719; Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695.
Decree.
For the above and foregoing reasons, the judgment of the District Court herein is amended so as to decrease the net additional medical expense awarded to plaintiff to the sum of $215 assessed against defendant Houston Fire & Casualty Company, and further amended so as to hold said defendant insurer liable to plaintiff in the amount of 12% of all weekly compensation payments now due and unpaid, with a like penalty on all such payments which might become 60 days overdue in the future, together with an attorney's fee payable to the plaintiff in the sum of $500. In all other respects, the judgment of the District Court herein is affirmed. All costs to be paid by defendants.
Amended; and as amended, affirmed.
NOTES
[1] "It is agreed that:

"1. In addition to any payments which are required under Division (2) of Paragraph One (a) of the Policy by the provisions of the applicable Workmen's Compensation Law, the Company will also pay the reasonable and proper cost of any additional medical, surgical, nurse or hospital services, medical or surgical apparatus or appliances and medicines which in the opinion of the Company may be reasonably necessary for the treatment of injuries sustained by any person who is entitled, on account of such injuries, to the benefits afforded under Division (2) of Paragraph One (a) or who is entitled to such benefits under other terms of the Policy.
"2. The Company's liability under this endorsement shall be limited to $10,000.00 on account of each person for whom benefits are payable under Paragraph One of this endorsement".
[2] Cf. LSA-R.S. 23:1165 providing that an employer and an employee may between themselves provide in writing for compensation over and above the statutory compensation rate. There seems no reason why the employer's agreement with a third party might not give rise to an enforceable right either to compensation or such other additional benefits as might be the subject of the agreement.
[3] Which reason for discontinuance so far as the record reveals was never advanced the claimant, claimant's attorneys, or in the pleadings, prior to the claim manager's testimony on the last day of trial.