101 So.2d 758 (1958)
Thomas H. SUMRALL, Plaintiff-Appellee,
v.
J. C. PENNEY COMPANY et al., Defendants-Appellants.
No. 4589.
Court of Appeal of Louisiana, First Circuit.
March 17, 1958.
Rehearing Denied April 21, 1958.
France W. Watts, Jr., Franklinton, for appellants.
*759 Carter, Erwin & Carter, Franklinton, for appellee.
TATE, Judge.
Defendants, an employer and its compensation insurer, appeal from judgment awarding plaintiff-employee workmen's compensation benefits for total and permanent disability.
At a pre-trial conference, the industrial accident causing a right ilio hernia, its repair by surgery voluntarily accepted, a residual disability, and the compensation rate were stipulated. The issues were narrowed to (a) whether plaintiff's future compensation should be conditioned upon his submission to further surgery of a minor nature and (b) whether defendant insurer's non-payment of further compensation, after plaintiff Sumrall refused to accept such tendered surgery, subjected it to liability for penalties and attorneys' fees under LSA-R.S. 22:658 for the alleged arbitrary and capricious nonpayment of weekly compensation undoubtedly due.
These remain the chief issues tendered to us by defendants' appeal and plaintiff's answer thereto.
Sumrall, the employee, had suffered two previous hernias, a little more than ten and twenty years, respectively, prior to the present such injury. Because of this, and because the operating surgeon felt that due to the previous operations Sumrall did not have enough natural fascia, or connective tissue, to close over the present hernia, a tantalum wire mesh was used in its repair. (Tantalum is a metallic element with minimal irritant qualities.) The evidence indicates this to be an acceptable surgical procedure under such circumstances; although many surgeons prefer to use, instead, a graft of fascia from other portions of the patient's body.
Following the operation of January 10, 1955 Sumrall commenced to complain of pain and tenderness in the groin when he attempted to bend.
Two general surgeons and a neurosurgeon testified on behalf of defendants, and a general surgeon's testimony was educed on behalf of plaintiff. The testimony of these medical specialists is relatively consonant with one another. All agreed that, although the surgical repair of the hernia itself had been successful, the plaintiff employee was disabled from following his occupation of carpentering by pain residual from some post-operative complication.
The two general surgeons testifying for defendants felt, from the tests conducted by them, that the most probable cause of plaintiff's disabling pain was the incorporation by adhesions of the ilio inguinal nerve or of some nerve-ending in the external scar at the site of the incision. The neurosurgeon and the other general surgeon testifying felt that, instead, the most probable cause of the disability was an ilio inguinal nerve irritation or neuroma within the body caused by or at the tantalum wire mesh, or possibly a foreign body reaction to the tantalum wire, or by an adhesion of said nerve within or to the internal suture of the hernia itself.
Each doctor agreed that the other contradictory diagnoses might be correct, although firmly believing his own to be more probably right. All the medical experts likewise agreed that if the cause of plaintiff Sumrall's residual pain is indeed simply an adhesion or neuroma at the external scar, an excision of the external scarthus loosening the skin and freeing any nerve endingcould most probably relieve the disability. (The evidence indicates this to be a simple and non-dangerous operative procedure, under local anesthesia, not necessarily requiring hospitalization, although such was advisable, costing $75, and resulting in a convalescent period of 7-10 days.) And they all agreed also that if the cause of the disabling pain was within the body at the site of the hernia repair, the most probable indicated procedure was major surgery, removing the tantalum wire mesh, and the performance of yet another hernioplasty this time using a fascial *760 graft; the neurosurgeon, however, feeling that alleviation of the pain should first be attempted by re-sectioning, that is removing, a portion of the ilio inguinal nerve above the site of the hernia.
Following the trial, the District Court rendered (with consent of both counsel) an initial or preliminary judgment on July 6, 1956, ordering compensation brought up to date and to be continued, subject to further orders of the court, and conditioning plaintiff's ultimate right to compensation to his submission to the minor surgery tendered at defendants' expenses, namely "a simple excision of his hernia scar" by a surgeon of his own choice. The court further ordered that the case be left open until such time as the court could determine the results of the operation as relating to plaintiff's ability to resume work.
According to the subsequent pleadings and medical reports found in the record, when plaintiff reported to the Ochsner Clinic for the operation, Dr. Robert Lynch by a report dated August 21, 1956, refused to perform the operation with the following terse statement:
"I do not feel that a simple excision of his scar to include the skin and subcutaneous tissue under local or any other anesthetic would result in his relief from pain. Under these limitations and with the belief that Mr. Sumrall will not be benefited from such an operation, I not only recommend that it not be carried out but refuse to do it."
On April 8, 1957, counsel for plaintiff filed a motion requesting final judgment for compensation for total permanent disability, based upon this circumstance. On the same date, defendants by motion requested that they either be relieved of liability to pay further compensation, or else that the plaintiff be ordered to submit to a panel of physicians for examination as to the necessity for the minor surgery in question.
At the hearing upon both of these motions on May 13, 1957, the court appointed three doctors to determine plaintiff's present physical condition and whether or not the simple excision of the scar was advisable.
These doctors' written reports unanimously recommended against the minor operation as unnecessary: two because of their belief that any pain suffered by plaintiff did not result from the hernia or its surgical repair; the third, because of his opinion that whatever pain was suffered by plaintiff could be due to the tantalum mesh.
Based upon the record as a whole, the District Court then on July 5, 1957, awarded plaintiff compensation for total and permanent disability, without conditioning his right thereto to submission to surgery. Plaintiff's request for penalties and attorneys' fees were denied.
The great preponderance of the medical evidence in the record indicates, without question, that plaintiff is totally disabled to perform his duties because of pain suffered as a result of the residual effects of the operation to repair the hernia sustained at work. That this totally disabling residual is compensable, and that plaintiff is not required to undergo another hernioplasty (this being major abdominal surgery), does not admit, under the jurisprudence, of serious dispute. See, e. g., Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175, affirming La.App. 1 Cir., 93 So.2d 263. And in view of the conflicting medical recommendations, plaintiff's refusal to submit even to the minor corrective surgery tendered cannot be regarded as so unreasonable as to subject him to the loss of his future compensation unless he submit to same. Coine v. Smith, La.App. 1 Cir., 100 So.2d 902; cf., Borders v. Lumbermens Mut. Cas. Co., La. App., 90 So.2d 409.
A very close and very serious question is posed by plaintiff's demand, reiterated by answer to the appeal, that he be allowed. *761 penalties and attorneys' fees against the codefendant insurer because of its arbitrary failure to pay him compensation, during admitted disability, because of his refusal to accept the tendered surgery. The pleadings and evidence clearly show that defendant terminated payment of compensation to plaintiff immediately prior to this suit only because of such refusal. The record further reflects the defendants' good faith belief that such constituted legal cause for terminating payment of compensation.
However, defendants were incorrect in this belief.
In Duplechien v. States Exploration Co., 94 So.2d 460, this court held that whether an employee should be required to submit to corrective surgery was not a medical question to be determined ex parte by the employer, but was a legal question to be determined by the courts; and that an admittedly disabled employee should be awarded compensation during the period during which this judicial determination (including appellate review) is being made, whether or not the courts ultimately find the employee's refusal to accept the operation is unreasonable. As a logical consequence, an insurer is without right to terminate compensation payments during the statutory number of weeks to an admittedly disabled employee ex parte and without judicial authorization and determination that the employee's refusal to accept the tendered surgery is unreasonable.
In Patterson v. Cargo Services, Inc., 95 So.2d 49, where similarly an insurer had terminated the payment of compensation because the employee refused the tender of surgery, our brethren of the Orleans Court amended the judgment so as to award penalties and attorneys' fees, holding, 95 So.2d 54:
"[I]t seems clear that, where the insurer suspends the payment of compensation, notwithstanding that the employee is admittedly totally or partially disabled, it must be cast for costs and attorney's fees, should the employee ultimately be held entitled to compensation. It is the calculated risk that the insurer takes."
It is with some hesitation that while acknowledging the above to be the correct interpretation of the law and while recognizing also that an insurer's non-payment for insufficient legal cause, however, sincerely advanced, will usually subject it to penalties, cf. Seguin v. Continental Service Life & Health Ins. Co., 230 La. 533, 89 So.2d 113, 55 A.L.R.2d 1014we have decided that penalties should not in the present instance be assessed against the codefendant insurer.
For, in determining whether the insurer's failure here to pay compensation was "arbitrary, capricious, or without probable cause", LSA-R.S. 22:658, for purposes of awarding penalties under the cited statutory section, we think that it may be appropriate to review such non-payment in the light of the jurisprudence at the time this suit was instituted immediately after compensation was terminated in November of 1955.
For it must be remembered, as so eloquently reviewed in the Orleans Court's opinion in the Patterson case, above-cited, that the doctrine that a disabled employee's right to future compensation could be conditioned upon his submission to minor corrective surgery is a creature of the jurisprudence and not of the compensation statute itself: to provide for an interstice not specifically regulated by the statutory enactment, the courts developed this equitable doctrine in the belief that the legislature did not intend compensation to be awarded to an employee whose disability resulted primarily from his deliberate refusal to avail himself of a nondangerous and nonpainful obvious cure tendered by the employer. See jurisprudence cited, e. g., in Borders v. Lumbermens Mut. Cas. Co., La. App. 1 Cir., 90 So.2d 409.
The limits and ramifications of this judicial doctrine, developed case by case and *762 only infrequently involved in litigation until recent years, were uncertain and could only be evolved over the course of several years of litigation. Cf., Wade v. Calcasieu Paper Co., La.App. 1 Cir., 95 So.2d 725. The Duplechien case, 94 So.2d 460, codifying the previous unreasoned practice and holding that an employee's refusal to accept surgery tendered (even if ultimately found by the courts to be unreasonable) was not a "reasonable cause" under LSAR.S. 23:1314 to terminate compensation, was not, for instance, rendered until 1957, and then only over the dissent of one member of the court; or more than two years after the present defendant's nonpayment of compensation for such cause.
Until recently, as almost all the cases on the subject indicate, the prevalent practice of securing a judicial determination as to the reasonability of the employee's refusal to accept the tendered surgery was, as in this case, for the insurer to terminate the payment of compensation and thus provoke the employee's suit in which the question could be raised.[1]
But able counsel for the present plaintiff-appellee points out, correctly in our opinion, that as the late jurisprudence makes plain it is unreasonable and arbitrary to withhold payment of compensation subsistence to an admittedly disabled employee during the period of litigation in which the courts are determining whether the employee's refusal to submit to surgery is or is not reasonable, since no matter which way the matter is ultimately decided, the employer and his insurer are liable for such compensation during such interval; and that therefore the correct way for the employer and his insurer to secure a judicial determination of the question is, while continuing to pay compensation in the meanwhile, to file proceedings directed to this end under the pertinent provision of LSA-R.S. 23:1311 that: "In case of dispute over or failure to agree upon a claim for compensation between employer or employee, or the dependents of the employee, either party may present a verified petition to the district court which would have jurisdiction". (Italics ours.)
However, since at the time the present litigation was commenced, the state of the jurisprudence was unsettled and the prevalent practice otherwise, we do not think it would be fair or proper to assess in the present instance penalties for arbitrary non-payment of compensation.
For the above and foregoing reasons, the judgment of the District Court is affirmed.
NOTES
[1] Based upon this practice, and unfamiliar with the provision of LSA-R.S. 23:1311 to be quoted below in the text, the present writer, as author of the Duplechien opinion, confesses to error in the obiter dictum, contained therein at 94 So.2d 466, insofar as contrary to the present holding, when we stated that both the employer and the employee "are entitled to resist their opponents' demands [i. e., that the employee submit to corrective surgery or, apparently, receive no compensation until he does so] without fear of penalty because they chose to assert their legal right to litigate the question."