**526**

John McKEAN, Plaintiff,

v.

**W. HORACE WILLIAMS COMPANY, Inc., Williams-McWilliams Industries, Inc., and The Employers' Liability Assurance Corporation, Ltd., Defendants.**

No. 7270.

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 25, 1958.

Frederick J. Gisevius, Jr., Robert F. Shearman, George M. Leppert, John Discon, New Orleans, for plaintiff.

Deutsch, Kerrigan & Stiles, Christopher Tompkins, New Orleans, for defendants.

J. SKELLY WRIGHT, District Judge.

The claim in suit is made under the Louisiana Workmen's Compensation Act.[1] Plaintiff, a journeyman iron worker, suffered a torn medial meniscus [2] plus chondromalacia [3] of the knee while working over water welding a steel piling supporting a wharf in the Mississippi River [4] being repaired by his employer, the defendant assured. The company doctor applied a leg-long cylindrical cast to the leg and sent him back to work the following day where he was again assigned to working over water, welding the piling supporting the wharf. He worked for three weeks with the cast on his leg. After the cast was removed he spent two additional months doing light work for the same employer. Thereafter for a period of several months he tried to continue in his chosen occupation as an iron worker with different employers, but he was unable to hold a job for any length of time because of the continuing pain in his knee. In addition, on occasion, and without notice, his knee would lock in the shape of a "V" causing him to fall. Since an iron worker is required to work on construction jobs, sometimes high in the air, this unpredictable activity on the part of his knee was not only a danger to the plaintiff himself but a danger to those with whom he was required to work. In fact, on one occasion while working 200 feet in the air on the construction of the Mississippi River Bridge at New Orleans, plaintiff's knee locked. When it became apparent to plaintiff that he could no longer pursue his former occupation as an iron worker, he completed high school at night and has now accepted a clerical position doing bookkeeping.

The medical testimony in the case, from both the experts of plaintiff and defendants, is to the effect that the plaintiff is disabled from performing the work of an iron worker, that a person with a torn medial meniscus is subject to unpredictable leg locking and falling as a result thereof and, consequently, should not be allowed to work in an occupation, such as iron worker, which would endanger his own life, as well as the lives of his co-workers. The medical evidence, however, is in dispute as to the remedy for plaintiff's condition. Plaintiff's expert testified that while an operation might improve plaintiff's knee, he would never be able to return to his former occupation. Defendants' expert testified that an operation was indicated not only for the torn medial meniscus but also for the chondromalacia caused by plaintiff's accident which was also present in his knee. In fact, the defendants' expert seemed to be more concerned about the chondromalacia than the torn medial meniscus. He testified that while the operation should almost completely eliminate the disability caused by the torn medial meniscus, it could not entirely eliminate the disability caused by the chondromalacia.

Plaintiff's position here is very simple. He states, and the medical evidence from both sides shows, that he is disabled from engaging in his former occupation by reason of the accident suffered while employed by the defendant assured. He has refused to submit to an operation on his knee because, after the operation, according to his doctor, he would still be disabled from engaging in the occupation of an iron worker. He insists most earnestly that the defendant's failure to pay him compensation of any kind in any amount has been capricious and arbitrary and that he is therefore entitled to penalties and attorney's fees provided by law.[5] The defendants, pointing to the

---

1. LSA–R.S. 23:1021 et seq.

2. The internal semilunar cartilage of the knee.

3. Cartilage softening, in this case affecting the patella or kneecap.

4. At the time he was injured, McKean was standing in a skiff welding the piling when wave wash from a passing vessel threw him and the skiff into the air. He was injured on landing in the skiff.

5. LSA–R.S. 22:658.

fact that the plaintiff was employed as an iron worker subsequent to his accident, assert that he is not disabled from performing work substantially similar to that which he customarily performed at the time of the accident. They further say that the plaintiff has been tendered an operation which, in any event, would remove any disability he now has and that his refusal to submit to the operation precludes his right to recover compensation.

■ It is difficult to understand the defendants' contention that McKean is not disabled from performing work substantially similar to that which he was performing at the time of the accident. Their own medical evidence shows unequivocally that he is so disabled, that the use of his injured knee is painful to him and that he is a danger to himself and to his fellow employees while working with his injured knee. The fact that he was sent back to work the day following the accident with a leg-long cast by the insurance company's doctor certainly is not evidence that under the law he is not disabled. It proves rather the extent to which some employers and some insurers, assisted by their doctors, will go in order to avoid paying compensation. Nor is the fact that he was otherwise subsequently employed for short periods as an iron worker convincing evidence that he is not disabled. The evidence is uncontradicted that when he worked subsequent to his accident he worked with pain, with danger to himself and to his fellow employees. In those circumstances under the law he is disabled[6] and is entitled to compensation in addition to any sums he might otherwise earn.[7] As a matter of fact, a few months after his accident, McKean was again employed by the defendant employer here and was discharged three days later, apparently because of the condition of his knee.

■■ The defendants' position that McKean is not entitled to compensation because he has refused to submit to an operation is no better taken. The Louisiana Supreme Court,[8] as well as her appellate courts,[9] have time and again stated that a compensation claimant is not required to submit to major surgery or be precluded from compensation. And the defendants' own medical expert testified that repair of plaintiff's knee would require major surgery. That alone should settle the matter. But there is more. Plaintiff's medical evidence shows that even with surgery, McKean would never be able to return to his former occupation of iron worker. Defendants cite two cases in support of their position that McKean must submit to an operation on his knee, neither of which was decided by the Supreme Court of Louisiana. In one, Fredieu v. Mansfield Hardwood Lumber Co., La.App., 2 Cir., 53 So.2d 170, the appellate court for the Second Circuit distinguished the Supreme Court's opinion in Simmons v. Blair, 194 La. 672,

6. Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6; Fluitt v. New Orleans, T. & M. Ry. Co., 187 La. 87, 174 So. 163; Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9; Bynum v. Maryland Casualty Co., La.App. 1 Cir., 102 So.2d 547.

7. See Geiger v. Globe Indemnity Co., D.C., 156 F.Supp. 615; Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; White v. Calcasieu Paper Co., La.App. 1 Cir., 96 So.2d 621; Myers v. Jahncke Service, Inc., La.App. Orl. Cir., 76 So.2d 436.

8. Simmons v. Blair, 194 La. 672, 194 So. 585; Bronson v. Harris Ice Cream Co., 150 La. 455, 90 So. 759.

9. Geiger v. Globe Indemnity Co., supra; Sumrall v. J. C. Penney Co., La.App. 1 Cir., 101 So.2d 758; Coine v. Smith, La. App. 1 Cir., 100 So.2d 902; Patterson v. Cargo Services, La.App. Orl.Cir., 95 So.2d 49; Williams v. Southern Advance Bag & Paper Co., La.App. 2 Cir., 87 So.2d 165; Johnson v. United States Fidelity & Guaranty Co., La.App. 2 Cir., 58 So.2d 261; Yarbrough v. Great American Indemnity Co., La.App. 2 Cir., 159 So. 438; Crawford v. Tampa Inter-Ocean S.S. Co., La.App. Orl.Cir., 155 So. 409; Moore v. List & Weatherly Const. Co., La.App. 2 Cir., 144 So. 147; O'Donnell v. Fortuna Oil Co., 2 Cir., 2 La.App. 462.

194 So. 585, holding that a compensation claimant is not required to accept an operation, by stating that in Simmons, in addition to a torn meniscus, there were other complications in the knee which caused the Supreme Court to hold that the compensation claimant should not be required to submit to an operation. Since Fredieu was suffering only from a torn meniscus, the appellate court held that he must submit to an operation. This Fredieu case is an aberration in the jurisprudence.[10] But it, too, supports plaintiff's position because here McKean, according to defendants' own medical evidence, is suffering not only from a torn meniscus but also from the possibly more serious complication, chondromalacia of the knee. The other case cited by the defendants in support of their position is French v. Employers Mut. Liability Ins. Co. of Wis., La.App., 2 Cir., 70 So.2d 179. The Supreme Court of Louisiana, however, granted a writ in that case after which it was settled amicably. Moreover, the French case has been repudiated by two subsequent cases from the Orleans Court of Appeals dealing with torn meniscus.[11]

 The only serious question in the case at bar is whether or not the plaintiff is entitled to statutory penalties and attorney's fees.[12] Defendants claim they were justified in not paying compensation because the plaintiff refused to submit to an operation. This operation was not offered to the plaintiff until many months after his accident and after a state court judge had refused to approve the compromise settlement proposed by the defendants to the then unrepresented plaintiff. Just how plaintiff's failure to submit to a tardily offered operation excuses the defendants from paying compensation from the day of the accident up to the day of the offer is not explained. Moreover, the jurisprudence in Louisiana seems to be that even where an operation is offered, the employer and the insurer must continue to pay compensation until the reasonableness of the plaintiff's refusal to submit thereto is judicially determined, or be assessed with statutory penalties and attorney's fees.[13] It must be owned, however, that this matter is not entirely clear and the Supreme Court of Louisiana in the case of Sumrall v. J. C. Penney Co., supra, has granted a writ of certiorari, limited to the question of statutory penalties and fees. Consequently, this Court will at this time deny the claim for statutory penalties and attorney's fees, preserving, of course, to the plaintiff the right to raise the point on appeal, by which time the Supreme Court of Louisiana will doubtless have decided the issue.

Judgment for plaintiff.

10. See Coine v. Smith, supra, and Patterson v. Cargo Services, supra.

11. Coine v. Smith, supra; Patterson v. Cargo Services, supra.

12. LSA–R.S. 22:658.

13. See Sumrall v. J. C. Penney Co., supra; Patterson v. Cargo Services, supra; Wade v. Calcasieu Paper Co., La.App. 1 Cir., 95 So.2d 725; Duplechien v. States Exploration Co., La.App. 1 Cir., 94 So.2d 460.