John Sidney McKEAN, Appellant,

v.

**W. HORACE WILLIAMS COMPANY,**
Inc., et al., Appellees.

No. 17776.

United States Court of Appeals
Fifth Circuit.

June 28, 1960.

John R. Brown, Circuit Judge, dissented.

Frederick J. Gisevius, Jr., Robert F. Shearman, John G. Discon, George M. Leppert, New Orleans, La., for appellant.

Christopher Tompkins, New Orleans, La., Deutsch, Kerrigan & Stiles, New Orleans, La., of counsel, for appellees.

Before HUTCHESON, TUTTLE and BROWN, Circuit Judges.

PER CURIAM.

Appellant, plaintiff below, sued defendant, appellee, for the benefits provided by the Louisiana Workmen's Compensation Act, LSA–R.S. 23:1021 et seq., and, in addition, sought to recover statutory penalties and attorneys' fees under LSA–R.S. 22:658.

The district judge, in a careful opinion,[1] found for the plaintiff on the claim for compensation but, on the authority of Sumrall v. J. C. Penney, La.App., 101 So.2d 758, then pending in the Supreme Court, denied the claim for statutory penalties and attorneys' fees, "preserving * * * to the plaintiff the right to raise the point on appeal, by which time the Supreme Court of Louisiana will doubtless have decided the issue".

On April 25, 1960, the Supreme Court affirmed the denial of statutory penalties and attorneys' fees in the Sumrall case,[2] and on its authority we affirm the district judge's denial of penalties and attorneys' fees in this case.

Affirmed.

JOHN R. BROWN, Circuit Judge (dissenting).

The Court's unilluminating per curiam is everything a famous world leader once described as an enigma wrapped in a mystery. It states that the District Court, though finding for the plaintiff on the existence of total disability nevertheless, "on the authority of Sumrall v. J. C. Penney, La.App., 101 So.2d 758, then pending in the Supreme Court, denied the claim for statutory penalties * * *." This Court then proceeds to declare that the Louisiana Supreme Court subsequently affirmed Sumrall "and on its *authority* we affirm the district judge's denial of penalties and attorneys' fees in this case."

How this can come about or how this can be described as "on the authority of Sumrall" escapes me.

In putting it forward in this fashion, I am relieved, however, of the necessity of discussing the record in any detail. For this Court in referring to the decision of Judge J. Skelly Wright as "a careful

---

1.  166 F.Supp. 526, 529.

2.  120 So.2d 67.

opinion" accepts a number of crucial facts as well as decisive legal conclusions.

The first was that McKean was totally disabled under the Louisiana Compensation Act from the date of his injury, November 6, 1956. This necessarily rejected the spurious defense of the Employer [a] that McKean's post-injury work record demonstrated that he was not disabled. All of this was irrelevant since the Employer's "own medical evidence shows unequivocally that [McKean] is * * * disabled, that the use of his injured knee is painful to him and that he is a danger to himself and to his fellow employees while working with his injured knee." 166 F.Supp. 526, 528. The second was that an operation on the knee was absolutely essential, until it was performed McKean could not perform the task of an iron worker or other similar laborer, and even after performance of the operation there would still be likely permanent partial disability. Consequently, unless the operation was performed, McKean was admittedly [b] disabled. This was known not later than mid-June 1957 when a Louisiana state district judge declined to approve a proposed settlement.

The third thing was that with this knowledge the Employer refused to pay compensation for the disability admittedly then existing unless McKean submitted to an operation on his knee. It made this demand first in mid-June 1957 before, during, and after the abortive settlement. It renewed this implied offer to pay compensation *if* McKean would accept the operation in the formal answer filed November 19, 1957 in McKean's suit for compensation benefits.[c] It renewed this conditional tender of compensation by a renewal of a tender of the operation in January 1958 during the course of taking McKean's pretrial deposition. By proceeding to trial on July 25, 1958, on its formal answer, note c, supra, the Employer impliedly renewed the tender as of that date.

The fourth thing is that the action of McKean in *refusing* to accept the tendered operation was not unreasonable under the Louisiana Workmen's Compensation law. Hence, in the Louisiana view disability was not due to the failure to accept medical surgery rather than the initial injury.[d] The injury was disa-

a. I use the term "Employer" indiscriminately to refer to the employer as well as its insurer. As a matter of fact, practically all of the dealings in the handling of the case have been by the insurer.

b. Under the Louisiana cases, the phrase "admittedly disabled" refers not merely to a concession or formal agreement by the defendant-insurer, but also to the existence of facts and circumstances that demonstrate without question that the employee, within the meaning of the Compensation Act, is disabled. See Cummings v. Albert, La.App.1955, 86 So.2d 727, 732. "Our Supreme Court has held that when there is *no bona fide dispute* as to whether compensation is due for disability, and the insurer nevertheless failed to tender the amount due, then such failure to pay compensation is clearly arbitrary, capricious and without probable cause subjecting the company to penalties under LSA–R.S. 22:658. Fruge v. Pacific Employers Insurance Co., 226 La. 530, 76 So.2d 719; Wright v. National Surety Corporation, 221 La. 486, 59 So.2d 695." (Emphasis supplied).

c. After a "first defense" constituting substantially a general denial, the answer asserted a "second defense" as follows: "Defendants show that the plaintiff was told by competent medical authority that he should have an operation performed to correct the defect in his knee and was told that to delay the operation was extremely ill-advised. Despite this knowledge and despite the defendants' offer to pay for the cost of the operation, plaintiff refused to submit to the surgical treatment recommended and still refuses although defendants' offer is still outstanding. Plaintiff is a healthy young man for whom the offered operation *would present no real risk.* By refusing to accept the proffered medical treatment under these circumstances, plaintiff has forfeited his right to any compensation that might accrue during the period of his refusal."

d. The question is whether the action of the employee, in declining the operation is so unreasonable that as a matter of court-imported equitable law, the employee's disability is actually due to his failure to accept a cure, rather than the

bling, it was reasonable for McKean to reject the tendered surgery, and the Employer therefore owed compensation.

What excuse did the Employer have for not paying compensation then continuously due? None but the assertion that McKean's refusal to accept the tendered operation justified its unilateral action in declining to pay any compensation at all. As of June 1957, November 1957, January 1958, and July 1958, did the law of Louisiana permit an employer to take such unilateral action?

The answer, of course, has to be found in Louisiana decisions for Erie properly gives us no latitude. In viewing it first from the standpoint of the District Judge, and then ourselves, I take it that however free Louisiana lawyers might be to anticipate or hope for ultimate reversal of decisions by the highest intermediate appellate court, each federal court is bound by such decisions unless there is convincing evidence that the highest court will not sustain them.[e]

Judge Wright whose decision is described as "a careful opinion" did not think the Employer was so justified. He correctly stated the Louisiana law to be " * * * that even where an operation is offered, the employer and the insurer must continue to pay compensation until the reasonableness of the plaintiff's refusal to submit thereto is *judicially* determined, or be assessed with statutory penalties and attorney's fees." 166 F. Supp. 526, 529.

He based this on two Louisiana court of appeal cases covering the precise point. The first was Duplechien v. States Exploration Co., La.App., 94 So.2d 460, decided March 25, 1957 (rehearing de-

nied May 2, 1957). The second was Patterson v. Cargo Services, Inc., La.App., 95 So.2d 49, decided May 13, 1957. The dates of these decisions are important because the several tenders of the operation and McKean's refusal to submit all occurred thereafter. These two cases positively held three things. First, an employer-insurer may not resort to such unilateral action. Second, whether the injured workman has to undergo an operation as a condition precedent to recovery of compensation benefits for his admitted (established) disability is a *judicial* question. And third, if the employer-insurer takes such unilateral action, it is liable for statutory penalties and attorneys' fees.

So far as this record reveals, and so far as my reading of every Louisiana compensation case I could put my hands on reflects, there was not even a bare cloud in the sky which would indicate any storm of doubt as of May 13, 1957, on what the Louisiana law was. Louisiana spoke through two cases. It spoke out loud and clear.

Has the law announced in Duplechien and Patterson fallen to the wayside? Has it been abandoned or repudiated? Has it lost any of its emphatic declaration that such unilateral action is deemed arbitrary and capricious [f] as a matter of law? When and how was doubt or discredit cast?

Again dates are important. And so is the case name since it is this case "and on its authority" which causes the majority to affirm denial of penalties and attorneys' fees. Sumrall v. J. C. Penney Company, La.App., 101 So.2d 758, was decided by the Court of Appeals on March 17,

industrial accident. This is discussed at length in Coine v. Smith, La.App.1958, 100 So.2d 902; Wade v. Calcasieu Paper Co., La.App.1957, 95 So.2d 725, 727; Patterson v. Cargo Services, Inc., La. App.1957, 95 So.2d 49; Borders v. Lumbermens Mutual Casualty Co., La.App. 1956, 90 So.2d 409, 411; Benefield v. Zach Brooks Drilling Co., La.App.1952, 59 So.2d 710; Simmons v. Blair, 1940, 194 La. 672, 194 So. 585; Larson, Workmen's Compensation Law § 13.22.

e. West v. American Telephone & Telegraph Co., 1940, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139; Six Companies of California v. Joint Highway District, 1940, 311 U.S. 180, 61 S.Ct. 186, 85 L. Ed. 114; Stoner v. New York Life Ins. Co., 1940, 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284; Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109.

f. LSA–R.S. 22:658.

1958. It is significant to note that all significant events in McKean's case had occurred prior to this time. Only the trial in July 1958 and its resulting judgment of November 10, 1958, were for the future.

And what did this much vaunted case do? It held two things as positively as judges are capable of writing the English language: (1) the previous holdings in Duplechien and Patterson [g] were expressly reiterated; (2) because the injury to sumrall occurred in 1955, and the refusal to pay compensation during Sumrall's rejection of tendered surgery also occurred in 1955, the Court of Appeals thought it inequitable to apply the principle of these 1957 cases (Duplechien and Patterson) to a 1955 case. For that reason, and that reason only, penalties were denied.

Nothing the Court of Appeals said or did in Sumrall could possibly have caused any concern to Judge Wright. What caused concern, and all that could possibly have done so, was the grant of certiorari by the Supreme Court of Louisiana on June 27, 1958. So it could not, as the majority states, have been "on the authority of Sumrall" that the District Judge denied attorneys' fees and penalties to McKean. More accurately, it was because he thought the grant of certiorari envisaged that Sumrall might be overruled on factor (1)—unilateral action being unreasonable and arbitrary as a matter of law. That would be the case, not of acting on the "authority of" Sumrall, but because it might not any longer be "authority."

Of course, as the Supreme Court was later to point out, the writ of review was granted "only insofar as it *denied* penalties and attorneys' fees." Sumrall v. J. C. Penney Co., supra, 120 So.2d 67. Despite this very restricted grant, I would assume that under the state appellate practice, this could bring into review the whole basic problem of penalties where compensation payments were suspended by unilateral action. There was, to that extent, the theoretical possibility that the Supreme Court might repudiate the Duplechien-Patterson concept. Had the Supreme Court done so, we could then have said that penalties should be denied "on its authority."

But what did the Supreme Court of Louisiana do? Again, in unmistakable language it categorically approved Duplechein and Patterson as to factor (1) and affirmed Sumrall on the basis of factor (2)—the inequity of 1957 concepts applied to a 1955 occurrence.

The Supreme Court stated the question before it. "Under these facts the sole question for our determination is whether the insurer was justified in discontinuing the payment of compensation upon plaintiff's refusal to submit to surgery. In other words, was the discontinuance of compensation payments arbitrary, unreasonable, or without probable cause so as to entitle plaintiff to the penalties and attorney's fees sought?" 120 So.2d at page 68. It then went straightaway to Duplechien where a like question was posed, though there expressed in terms of reasonableness or unreasonableness of the action of the injured workman. Then followed what is so categorical and unqualified. "There the Court of Appeal's holding, *which we approve and with which we are in full accord,* was that 'The question of whether the employee's refusal to accept the tendered surgery is reasonable, is not a *medical* question; it is a *legal* question, involving not only an assessment of the medical testimony, but of the circumstances surrounding this particular employee under the particular facts of this particular

---

**g.** The trial court had found, as did Judge Wright below in our case, that the employee's refusal of the operation was not unreasonable. The Court of Appeals affirmed and then allowed statutory penalties. "It seems clear that, where the insurer suspends the payment of compensation, notwithstanding that the employee is admittedly totally or partially disabled, it must be cast for costs and attorney's fees, should the employee ultimately be held entitled to compensation. It is the calculated risk that the insurer takes." Patterson v. Cargo Service, supra, 95 So.2d at page 54.

case, and an application to these facts of the legal standards evolved and evolving through the jurisprudence. We are inclined to believe that such determination can never properly be made ex parte by one of the interested parties, but only by the court after a judicial assessment of all the surrounding facts and circumstances of the particular case concerned'." 120 So.2d at page 69. The Court then expanded this in language of its own. " * * * We think that even though an employer may have cause to believe that the employee's disability may be removed by surgery, the employer cannot ex parte terminate the payment of compensation upon the refusal of the employee to submit to surgery, and that if he does so, the discontinuance of compensation payments will be deemed arbitrary, capricious, and without probable cause so as to entitle the employee to statutory penalties and attorney's fees. The question whether an employee's refusal to submit to surgery is reasonable is not a medical question, but a legal question to be determined by the court under the facts and circumstances of each case, and the burden is on the employer to obtain judicial determination of the necessity of surgery, and not on the employee to show that his refusal to submit to surgery is reasonable." 120 So.2d at page 70.

So far as factor (1)—insurer may not take unilateral action—the Court fully approves Duplechien. As to factor (2)—retroactive application of 1957 concept to 1955 events—it likewise affirmed. It recognized that "The Duplechien case was decided by the Court of Appeal in March, 1957, after the insurer's termination of compensation payments and the filing of plaintiff's suit in the instant case, and as far as we have been able to discover, that case was the first such holding by an appellate court of this state." 120 So.2d at page 69. And it concluded that it was " * * * in full accord with the Court of Appeal * * * that the statutory penalties should not be imposed in this case because, as stated by that court, ' * * * since at the time

the present litigation was commenced [December 1955], the state of the jurisprudence was unsettled and the prevalent practice otherwise, we do not think it would be fair or proper to assess * * penalties.' " 120 So.2d at page 70.

Thus, as I read the law, what Sumrall did, far from unsettling or detracting from the authority of Duplechien, gave it the unqualified imprimatur of the Supreme Court. That "law" may be simply restated: (1) from and after March 1957 an insurer-employer may not resort to unilateral action and if it does so, the failure to pay compensation is deemed as a matter of law to be arbitrary, capricious and unreasonable requiring the imposition of penalties; (2) on cases arising out of occurrences taking place prior to that time, a court may exercise discretion to deny penalties on equitable grounds.

So much for the law. Announced in 1957 it was binding on the District Court until set aside, see note e, supra. It was never set aside. Was it binding on Louisiana lawyers and compensation insurer-employers?

I state it that way since I must recognize that there is a substantial difference. Erie fences us in. Federal judges may prophesy and even hope for ultimate abandonment of a policy reflected by opinions of intermediate state appellate courts. To this extent, they may join hands with some of their former associates of the bar. But while the lawyers are free to make the predictions with perhaps nothing more than the irrepressible optimism of advocates confident of the time when there will be lifted from their clients the burden of "outrageous" law, federal judges are not. We have to see definite signs by which in a reasoned sort of way—not hope born of advocacy —we can predict with considerable assurance that the highest court of the state when the question gets there will reject the particular holding. Bernhardt v. Polygraphic Co., 1956, 350 U.S. 198, 204–205, 76 S.Ct. 273, 100 L.Ed. 199, 206.

Consequently, the grant of certiorari in Sumrall on June 27, 1958, perhaps

could have been a factor of relevance in judging the good faith of the Employer's conduct after that date. Obviously, unless we are to confect a reverse fiction which outstrips the traditional one that law once announced is deemed to have existed in the great void preceding Genesis, judicial action taking place in July 1958 could afford no basis for justification of conduct in June 1957, in November 1957 or January 1958. Going even a step further, I could even assume that the grant of certiorari was the "sign" which the insurance bar had patiently hoped for that the Supreme Court would at long last lead the law out of the Duplechien wilderness. That being so, perhaps an insurer-employer could conscientiously have continued steadfast in the belief that someday, someway, these two cases would be overruled.

That brings me finally to the most enigmatic part of this Court's action. This record is threadbare of a single stitch of *evidence* that the Employer refused to pay compensation admittedly due because of a genuine belief that the law did not compel it. There is not a single word of testimony that that is why the Employer declined to pay. The Claims Adjuster was called as an adverse witness by McKean. He was examined at length about the various settlement proposals, the details of which turned out to be beyond his personal knowledge. Nowhere did he state that compensation was not paid because plaintiff rejected any tendered surgery or that because of it plaintiff was therefore not "disabled" under the Act. The most that can be said is that, as reflected by the Employer's formal answer, note c, supra, and the

briefs filed here, in retrospect this might be a good reason from a legal standpoint whether it was the real reason in fact.

To this good day, no one outside of the inner councils of the Employer knows why compensation was not paid. The briefs make out a rather persuasive showing that the law was uncertain. But we are concerned here with action by the Employer, not its counsel. Did the Employer learn of this uncertainty? Was it because of this uncertainty that compensation was suspended? Or was it for some other reason—say, perhaps, the natural estimate that if economic pressures were fully exploited, it might bring about an earlier and more acceptable compromise? It was up to the Employer to prove the *facts* forming the basis of its refusal to pay compensation.[h] And, of course, Sumrall puts this burden squarely on the shoulders of the employer. "The court [in Duplechien] there further concluded, *and we think correctly*, that 'the burden is and should be put upon the employer to secure a judicial determination of the necessity of the surgery, rather than upon the employee to prove that his own refusal to submit to same is reasonably based.'" 120 So.2d at page 69.

As it is, this Court takes a 1960 decision of the Supreme Court of Louisiana reiterating a policy authoritatively announced in 1957 to justify nonpayment of compensation admittedly payable during 1958 and 1959. It does so on the assumption that the Employer was acting on the basis of a belief in the uncertainty of that law.

I cannot comprehend the first and I find no record basis for the second.

I therefore dissent.

---

h. Justice McCaleb, for the Supreme Court, Wright v. National Surety Corporation, 1952, 221 La. 486, 59 So.2d 695, 698, recognizes the necessity for such proof. "The only defense of the insurance company, according to its *pleadings* and the *brief* of its counsel both here and in the Court of Appeals, is that it was fully justified in refusing to pay for the compensation after April 18, 1948. However, no *evidence* was offered to support this position, and no effort was ever made to explain the summary stoppage of all compensation payment despite the unanimous medical testimony showing that the insurer was well aware at that time that plaintiff was still partially, if not totally, disabled. Obviously, the discontinuance was indefensible." (Emphasis supplied).

It is customary to offer such proof. See, e.g., Cummings v. Albert, La.App. 1955, 86 So.2d 727; Chamberlin v. Maryland Casualty Co., La.App.1954, 75 So.2d 366, 376.