REID, Judge.
This is a suit for declaratory judgment brought by Employers Liability Assurance Corporation, Ltd., workmans compensation insurer of Lane and Company, Inc., the employer of the defendant Hubert T. Kelly.
Defendant’s employer Lane and Company, Inc., intervened in this suit joining the plaintiff in seeking a declaratory judgment decreeing that its employee, Hubert T. Kelly, was no longer entitled to benefits from the Louisiana Workman’s Compensation Act.
To the original petition and the petition of intervention the defendant filed exceptions of prematurity and no cause of action, which were overruled by the Court.
The defendant filed answer to the original petition and the petition of intervention, admitting the accident on July 16, 1963 but denying the remaining allegations and plead that he had sustained a fracture of the right os calcis and serious and permanent disabling injuries to his left knee and that these injuries particularly the one to his right heel have rendered him totally and permanently disabled.
The case was then tried on the merits and judgment rendered in favor of the plaintiff and intervenor against the defendant declaring that the plaintiffs Employers Liability Assurance Corp. Ltd., and Lane and Co., Inc. had no further liability to Hubert T. *814 Kelly for any workman’s compensation benefits on account of Kelly’s accident of July 16, 1963 while working for Lane and Company, Inc.
From this judgment the defendant Hubert T. Kelly has brought this appeal.
The facts are, on July 16, 1963 the defendant Hubert T. Kelly was working for Lane and Company, Inc., on the docks at New Orleans. Kelly was an iron worker and he was engaged at the time in plumbing columns, that is using a plumb bar to straighten them up. He was walking on a bracer and was stepping from one column to the other when he fell and fractured his right heel, os calcis. He was then taken to Dr. John D. Andrews, the treating physician. Dr. Andrews diagnosed his case as a contusion of the plantar aspect of the right heel with an inverted Y shaped fracture of the right os calcis in good position. He put him in a long leg cast and prescribed crutches and rest with his leg elevated. He' predicted a four to six months disability.
Plaintiff insurer paid $35.00 a week compensation to Kelly for a period of 101 weeks or a total of $3535.00. At the time the suit was filed they alleged they would, and did continue paying his compensation, and would continue until after the termination of this litigation. The suit for declaratory judgment was filed on September 4, 1964 alleging that Kelly was discharged to return to work in October, 1963 and has been working continuously for Williams-Mc-Williams Industries, Inc. since that time, earning a full wage equivalent to his earnings prior to the alleged accident, and that said work since October, 1963 was essentially the same type work he performed prior to the time of the accident on July 16, 1963.
This suit was filed to avoid any possible penalties under Louisiana Workman’s Compensation Act and petitioner continued paying the weekly compensation benefits but alleged that he was not entitled to any further compensation benefits because the injury to his os calcis had healed and he had been paid in full for the percentage of loss of the function of his heel and his injuries do not prevent him from doing work similar to that which he did at the time the accident occurred under similar conditions or circumstances. They further allege that Kelly claimed that in addition to the heel he suffered other injuries, including an injury to his left knee in the aforesaid accident of July 16, 1963 but plaintiff denies this and alleges specifically that complaints referable to his knee are not a result of the accident of July 16, 1963, and in any event, Kelly was not disabled by reason of the condition of his left knee.
Defendant sets up two defenses. First, that since this action is brought pursuant to the Declaratory Judgments Act, and the workman’s compensation statute, there is not judicial authority for these proceedings, and second, that he is still permanently disabled in pursuing the same kind of work that he had been doing at the time of the accident.
We will take up the first defense at this time.
Defendant in his Brief states that the only cases which have permitted a declaratory judgment proceedings in a workman’s compensation case have emanated from this Circuit. These cases are:
(1) Gary v. Marquette Casualty Co., 72 So.2d 619 (1954)
(2) Employers Liability Assurance Corporation Ltd., v. General Accident & Life Insurance Corporation, La.App., 125 So.2d 689 (1960)
The Gary case, supra, deals with an attempt by an injured employee to obtain a declaratory judgment against the compensation insurer which would set forth the status and extent of his disability. The insurer in the meantime had been making regular and timely payments of weekly compensation benefits under thé act. The Court held that an exception of prematurity was sound under the circumstances of that case and dismissed plaintiff’s action.
*815 Appellant Kelly contends that as long as weekly compensation benefits are being paid the Declaratory Judgments Act is not available to either party because of the absence of the clear, present and judiciable controversy, and cites the Gary case, supra, in support of this contention. The holding of the Gary case is as follows:
“The purpose of the Uniform Declaratory Judgments Acts, as stated in 1 C.J.S. § 18, verbo: Actions, sub-title: Purposes of Acts, page 1022, is as follows:
“ ‘The general or primary purpose of a declaratory judgments statute is to provide a remedy and speedy remedy, in cases of actual controversy, for determining issues and adjudicating the legal rights, duties, or status of the respective parties, before controversies with regard thereto lead to the repudiation of obligations, the invasion of rights, and the commission of wrongs. In other words the purpose of such a statute is to supply deficiencies in legal procedure which existed before the enactment of the statute, to afford relief in cases that could not he tried under existing forms of procedure, and provide a method of procedure to have issues concerning rights speedily determined, which otherwise would be delayed, to the possible injury of, an added expense to, those interested if they are compelled to wait the ordinary course of judicial proceeding.’
“In the present case, a remedy is afforded the petitioner, provided that the provisions of LSA-R.S. 23 :1314 is complied with. Furthermore, if the remedy sought were not expressly forbidden by the said Act, we believe that petitioner could have proceeded under the Declaratory Judgments Act even though an additional remedy were provided by the compensation act.
Prior to 1926, an employee could bring suit to determine his future payments under the compensation act even though he were, at the time of the suit, being paid full compensation. However, by Act No. 85 of 1926, LSA-R.S. 23:1314, the compensation act was amended to provide that the plea of prematurity would lie where the petitioner was being paid full compensation. In Lanoue v. Century Indemnity Co., La.App., 30 So.2d 207, at page 208, this court said:
“ ‘Before the amendment of Section 18 of Act No. 20 of 1914, the Employers’ Liability Act, by Act No. 85 of 1926, an employee could file a suit and obtain a judgment on his claim for compensation, even though he was being paid the maximum allowance, where the employer would not admit liability for a definite amount dr for a definite period, or admit that the injury was within any particular class. Daniels v. Shreveport Producing & Refining Corporation, 151 La. 800, 92 So. 341. This ruling was based on the ground that Section 18 (now R.S. 23:1311) permitted either party to file a suit in case of a dispute over, or failure to agree upon a claim for compensation. It was held that a failure to agree on the nature, extent and period of the disability constituted such a dispute as to justify the bringing of an action to have the disputed matter adjudicated.
“ ‘However, in the amendment of Section 18 by Act No. 85 of 1926 (after the above ruling was announced), two paragraphs were added to subsection 1 of the Section designated (B) (now R.S. 23:1314) and (C) (now R.S. 23:1318). In our opinion, these two paragraphs were added to the subsection in order to prevent the filing of a suit by an injured employee against his employer where the employer is paying full compensation, even though the employer would not admit the extent of the disability nor the period of time he would continue to pay this maximum compensation. Indeed, the plain wording of paragraph (B) of this amended subsection could mean nothing else. The added paragraph says that unless the injured employee or his dependent alleges in his complaint that he is not being or has not *816 been paid, and that the employer has refused to pay, the maximum per centum of wages to which he is entitled under the provisions of the act, the filing of his suit shall be premature and shall be dismissed.’ ”
In the Gary case, supra, the employee was receiving maximum compensation allowable but the employer and his insurance carrier did not admit that the disability was permanent since such relief is expressly prohibited by LSA-R.S. 23:1314. We do not feel that the Gary case is applicable to the present case.
Employers Liability Assurance Corp. Ltd. v. General Accident & Life Insurance Corp., supra, involves a conflict between two compensation insurers over which one was responsible to the injured employee for continued payments of weekly benefits. This case held as follows:
“Under part II of the Uniform Declaratory Judgments Act, LSA-R.S. 13:4232, it is provided':
“ ‘Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, or ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.’
“It thus appears that both Employers’ and City are interested parties within the meaning of the above quoted statute and there is an obvious justiciable dispute between Employers’ and City as against General as to the liability for compensation because of the alleged injuries suffered by Employee. Therefore, we see no merit in the exceptions of no cause and no right of action filed by General and it is our opinion that the Uniform Declaratory Judgments Act properly affords to Plaintiffs the remedy for the determination of the issues presented.”
Plaintiff appellee cites an older case, Sumrall v. J. C. Penney Company, La.App., 101 So.2d 758, which is likewise a decision of this Court.
This Court held in the Sumrall case, supra, with Judge Tate as the Organ of the Court as follows:
“(4) But able counsel for the present plaintiff-appellee points out, correctly in our opinion, that as the late jurisprudence makes plain it is unreasonable and arbitrary to withhold payment of compensation subsistence to an admittedly disabled employee during the period of litigation in which the courts are determining whether the employee’s refusal to submit to surgery is or is not reasonable, since no matter which way the matter is ultimately decided, the employer and his insurer are liable for such compensation during such interval; and that therefore the correct way for the employer and his insurer to secure a judicial determination of the question is, while continuing to pay compensation in the meanwhile, to file proceedings directed to this end under the pertinent provision of LSA-R.S. 23:1311 that: ‘In case of dispute over or failure to agree upon a claim for compensation between employer or employee, or the dependents of the employee, either party may present a verified petition to the district court which would have jurisdiction.’ ”
See also Fidelity & Casualty Co. of New York v. Ivory, La.App., 129 So.2d 894.
We therefore think under our jurisprudence that the plaintiffs do have a right to seek a declaratory judgment in this case, and that the Trial Court is correct in so holding.
The second question brought up by the appellant is the question of permanent disability of the defendant Kelly. In the trial on the merits Kelly’s claim for total' and *817 permanent disability and for compensation by reasons thereof is based on the alleged disability resulting from injuries to his left knee and right heel.
The Trial Judge in his written reasons for judgment found:
“The difficulty in the heel results from the accident complained of, there having been a fracture of the os calcis. This in the opinion of both doctors has mended satisfactorily. According to Dr. Grun-sten, there is no actual disability resulting from the fracture, although he gave a five to ten percent 'academic disability.’ Dr. Andrews gave a thirty per cent disability resulting from the fracture, but both doctors felt that Mr. Kelly should be able to return to the duties of his occupation.”
On the trial of this case Dr. R. C. Grun-sten and defendant both testified as to the nature and extent of defendant’s injury. In addition certain reports signed by Dr. John D. Andrews, Kelly’s treating physician, were placed in evidence because Dr. Andrews had died in the meantime.
With regard to the injuries to defendant’s left knee we find in his testimony as follows :
“Q: Then you ambulated or walked on it with crutches?
A: Right.
Q: Two or three or four nights after the accident you felt your right knee catch up on you?
A: Right.
Q: And you said that you had to massage it to get it loosened up ?
A: That is right.”
We presume that this was a typographical error and that the appellant was referring to his left knee.
Dr. Grunsten in his testimony in giving a history as related to him by Kelly testified as follows:
“He states that the cast applied to his leg with the patient wearing this cast for a period of about eight weeks. He states that on his second night at home, he turned in bed and his left knee locked on him. He states that he was not aware of any injury to the knee particularly associated with the fall. He states he rubbed his knee and moved it around and finally worked it around about and was thereafter comfortable by the next morning.”
Again quoting from Dr. Grunsten’s testimony in regard to Kelly’s ability to return to work, we quote as follows:
“Q: Referring back to the fractured heel considering the history he gave you in your findings and examination and what he has said here to-day would you consider the residual of the heel as significant residual or would you consider it otherwise? Would you please state?
A: I think this bears on the interpretation of the term significant. If I may, an interpretation of disability rating which interferes with an individual’s opportunity periodically, normal day of their working activity, I think this must be considered significant. I do not believe that this man’s os calcis fracture, or heel fracture would in any way interfere with the ability to perform any desired physical activities.
Q: Could he go back to work on top of pilings and climbing ladders?
A: He could perform any activity which he had been accustomed to perform prior to this accident.”
In relation to Mr. Kelly’s alleged knee injury Dr. Grunsten testified as follows:
“Q: Now there may or may not be some question as to whether Mr. Kelly has *818 suffered at any time from a torn knee or meniscus in the left knee. Now will you tell us if, in your opinion, he does or does not have such a situation?
A: With reference to the left knee I do not think that he has a torn meniscus, medial or lateral.
Q: Could you describe, could you tell us the reasons for your saying that he does not have a torn medial meniscus in the left knee?
A: Well the reason for this was the examination performed on this man on the occasion and I saw him. That 'is, the knee functions were well within the normal ranges of motion. If a meniscus is torn it acts much the same as a torn jamb under a door. The door can be opened so far and it is blocked when it hits the torn place. In a knee where you have a torn cartilage it acts in the same manner. The knee will go through a given range of motions and it will block there. In situations where the meniscus is torn and has been manipulated or displaced back into its normal position by a performance that we call a Mc-Murray and Atlee test, which are manipulations of the knee itself. You can redisplace this meniscus into the joint and again produce locked knee.
Q: When you perform the McMurray and Atlee test to look for a torn knee or meniscus what finding or sign do you notice that truly indicates a torn meniscus ? Describe it to the Court.
A: A typical sign is that of a snapping sensation, with local tenderness directly over the area of the torn meniscus.
Q: Is it a definite snap?
A: It is a definite snap.
Q: And what . .
A: And with this, an impairment in motion or a restriction in motion.
Q: And what .
A: The restriction would not have to be there to make it possible.
Q: Excuse me. What was the type of finding or sound that occurred when you performed the McMur-ray-Atlee test on Hubert Kelly?
A: This is a crushing sensation in the medial part of the joint which is the same type of sensation between the knee cap and femur. In other words, the sensation of roughening of the joint.
Q: Is that a distinct and noticeable difference from the snapping that you described?
A: That is right.”
Dr. Andrews in his statement dated September 3, 1964 stated “I feel that Mr. Kelly has made a nice recovery from a very severe injury to his right os calcis and is able to return to his former occupation.” However, Dr. Andrews did state that he felt that Mr. Kelly would always has some difficulty due to his fractured os calcis and that he estimated a partial permanent disability to be 30% of his right lower extremity. Dr. Grunsten stated that he had had an academic disability of 10% which was arbitrary as opposed to function. He explained this “academic disability” as an arbitrary finding by him based on the fact that any .injury would produce some disability but it would not impair the man’s functional ability to perform his usual labors.
In conclusion, the issue as to disability is a question of fact and we feel that the Trial Court’s findings are correct. It is amply supported by the evidence and it would not be reversed unless manifestly erroneous.
*819 For these reasons the judgment of the Lower Court is correct and is hereby affirmed.
Affirmed.