ODOM, Justice.
 

 This is a suit by an employee against his employer and employer’s surety under the Workmen’s Compensation Act (Act No. 20 of 1914, and amendments) for compensation. Plaintiff alleged that while at work shortly after midnight on the morning of July 25, 1935, he was accidentally injured, and that as a result thereof was at the time he filed the suit, and would remain, totally unable to perform any work of a reasonable character. He was being paid at the time $22.40 per week. He prayed for judgment awarding him weekly compensation in the sum of $14.56, which is 65 per cent, of his wages, for 400 weeks, and $100 for medical expenses.
 

 Defendant denied liability on the ground that plaintiff was not injured as alleged. There was judgment in the district court in favor of plaintiff for compensation at the rate of $7.28 per week for 300 weeks, and the amount claimed for medical expenses. Defendant appealed to the Court of Appeal, Second Circuit (177 So. 262), where the judgment was reversed and plaintiff’s demands rejected in toto.
 

 On application made by plaintiff, we ordered the case up, because, according to a statement of the facts made by the Court of Appeal, it clearly appears that the court erred as a matter of law in rejecting plaintiff’s demands in toto.
 

 The court found as a fact that early in the morning of July 25 plaintiff was injured to some extent while at his work, and that on the same day he consulted Dr. Jones, a physician, complaining that he had been injured; that Dr. Jones treated him by strapping his back; that on the following day about 10 o’clock plaintiff, complying with instructions given him by defendant’s timekeeper, went to the office of Dr. Gamier,
 
 *471
 
 defendant’s physician, and that Dr. Gamier treated him until August 8, and on that date discharged him, saying that he was then Able to go hack to work.
 

 It therefore does not matter, as touching the point presently under discussion, whether plaintiff was or is permanently disabled as a result of his injury, the facts being that while at work he was accidentally injured and that as a result of such injury he was under the treatment of physicians for exactly 14 days — July 25 to August 8. Therefore, according to the court’s findings, plaintiff was unquestionably disabled' for at least 2 weeks.
 

 Paragraph 4, subsec. 2 (K), § 8, Act No. 20 of 1914, as finally amended by Act No. 242 of 1928 (page 357), provides that “No compensation shall be paid for the first week after the injury is received”; unless disability from the injury continues for 6 weeks or longer after the accident, in which event compensation shall be paid for the first week.
 

 So that, if it be conceded that plaintiff was not disabled by the accident for as long a period as 6 weeks, he nevertheless is entitled to compensation for at least one week according to the statute and the court’s own findings.
 

 The original Compensation Act, which is No. 20 of 1914, provided in section 8 that “No compensation shall be paid for the first
 
 two
 
 weeks after injury.” (Italics ours.) Section 8 of that act has been amended seven times (Act No. 243 of 1916, Act No. 38 of 1918, Act No. 247 of 1920, Act No. 43 of 1922; Act No. 216 of 1924, Act No. 85 of 1926, and Act No. 242 of 1928), and in each of the amending, acts it is provided that “No compensation shall be paid' for the first week after the injury is received.” The Court of Appeal probably overlooked the change made in the amending acts:
 

 The judgment under review will have to-be reversed and the plaintiff awarded compensation for at least one week, if for no longer period. He should have judgment also for his medical expenses.
 

 Having granted the writ, we have followed our custom of reviewing the casé as a whole in order to ascertain what judgment, in our opinion, should be rendered. We have read all the testimony, and, after doing so, our conclusion is that plaintiff was not partially or totally disabled as a result of the injuries which he received, except during the first two weeks while he was under the treatment of physicians.
 

 That plaintiff was slightly injured while at work is proved beyond question. He, with seven others, was engaged in cleaning a joint of iron piping 18 inches in diameter and 90 feet long, and while doing this work it became necessary to turn the joint of pipe over. In doing this, plaintiff’s right hand was caught between the pipe and the ground. To extricate the hand he, with the help of the other workers, lifted the pipe, and in doing so strained the muscles of his back. He worked for a few minutes longer and quit. Early in the morning he and several laborers were carried to Bastrop on a truck provided by the employer. After reaching Bastrop, he went to see Dr. Jones, a local physician. Dr. Jones’ report shows
 
 *473
 
 that he examined plaintiff and “found him suffering from injured muscles of the back.” On the following day plaintiff, at the suggestion of defendant’s timekeeper, went to Dr. Gamier, who diagnosed plaintiff’s injury as “lumbar strains.” Dr. Gar-nier testified that he “strapped it with adhesive tape” and discharged him as able to work on August 8. The doctor said the “lumbar area of the back” is the “lower back from the pelvis to the ribs,” or what is generally referred to as the “small” of the back. He made a urinalysis, found' neither blood nor pus, and said plaintiff made no complaint to him of pain in the region of the kidneys.
 

 The testimony shows that Dr. Gamier discharged plaintiff as being well and able to work on August 8, on which date or possibly a day or two later plaintiff requested him to issue a certificate to that effect in order that he might obtain work at the paper mill. The doctor refused to issue such a certificate, and counsel for plaintiff argue that his refusal shows that the doctor knew that plaintiff was not well. The doctor was asked on cross-examination why he refused to issue a certificate if, as a matter of fact, plaintiff had fully recovered. He first refused to divulge his reason, but later said his reason was that plaintiff had told Miss Sawyer, a nurse in his clinic, that “he knew the job was going to play out in a few days and he might as well get it out of the insurance company.”
 

 The facts are that on or about August 10, which was 2 days after Dr. Gamier had discharged him as cured, plaintiff went to work for.the Emergency Relief Administration, a governmental agency then engaged in grading and leveling a plot of ground for the School Board. Plaintiff says he told the foreman that he had recently hurt his back and asked for light work. The work assigned him was the setting and the driving of stakes, which involved “stooping and squatting.” Peters, the foreman, said no complaint was made to him about the way Jones did his work, and that plaintiff made .no mention of having been previously injured. This work continued until some time in the month of November, and plaintiff received $47.50 for 16 days’ work each month.
 

 Thereafter he went to work, for the Works Progress Administration, which was constructing a sewer system for the town of Bastrop. His work consisted, according to his testimony, of rolling a wheelbarrow with light loads of cement, and of helping to lower joints of pipe, weighing 75 to 80 pounds, into the ditches or trenches. The joints were lowered by him and another man, the method being to suspend each joint of pipe on a rope, swing it over the ditch or trench, and then lower it. Plaintiff testified that these trenches were about 5 feet deep, although Young, the foreman, said they were from 5 to 15 feet.
 

 Mr. Young, supervisor of the WPA, testified that plaintiff was employed about November 20 as a laborer, but later was assigned work as a pipe handler and worked every day. Mr. Young was asked: “What did he do?” and said, “He handled pipe, mixed concrete, dug the trenches, and everything necessary on the job.” He said he saw nothing which indicated that plaintiff was working under difficulties. Plaintiff
 
 *475
 
 made no complaint to Young when he went to work about having been hurt, but about 6 weeks later told him “he had an ailment and couldn’t do heavy work.” It was brought out, however, that this complaint was made after plaintiff had filed his suit. Young said he saw no difference between plaintiff’s performances and those of other laborers; that he was as good a worker as he had on the job. Mr. Young explained that the method of lowering the joints of pipe was this: “They have a three-quarter inch rope and they run it through the pipe, one man on each end of the rope, and the pipe layers take hold of it and lay it in place.” Mr. Young was asked what other work plaintiff did, and replied that he helped dig the trenches, using a shovel, and never loafed on the job. Mr. Cargile, construction engineer, and others gave similar testimony.
 

 Plaintiff continued the work for some time after he filed his suit and until just before the trial of the case in March, 1936. It is shown that he did only light work for the ERA, the foreman explaining that there was no heavy work to be done. But what plaintiff did for the WPA was heavy work, and it is undisputed that he did as much of it as any one of the other laborers.
 

 These facts are highly inconsistent with plaintiff’s contention that he was totally or even partially disabled by the accident. The fact that he did work shows that he could work. He says he was in constant pain and that he worked because he had to support his family. But he made no complaint to Mr. Young when he went to work for the WPA, and, while he asked for lighter work some 6 weeks later, he did not then say he was unable to work; and, as we said, this request was made some time after he filed the present suit.
 

 Plaintiff alleged and swore that he was never able to work after the accident. Apparently, however, he thought he was able to go back to work when Dr. Gamier discharged him on August 8, because he says he asked the doctor to issue a certificate to that effect and became angry because the doctor refused to do so.
 

 Nine physicians testified, five for plaintiff and four for defendant. Their opinions touching the vital points involved are in hopeless conflict. After reading and considering all they said, we are utterly unable to form any definite conclusion as to whether plaintiff was at the time he filed his suit suffering from any disability at all; and, conceding that he was, whether such disability could be traced directly or indirectly to> the injury.
 

 Counsel for plaintiff say that we should construe not only the statute but the testimony liberally in his favor and give him the benefit of the doubt, if any. That is true, and that is what this and the other courts of the state have always done. But, even if it be conceded that the testimony of the physicians is in such conflict as to raise a doubt as to his condition, the facts that plaintiff apparently thought he was able to. work after Dr. Gamier discharged him, that he went to work a few days thereafter, and that he performed heavy manual labor for the WPA for some time prior to and for 2 months after he filed his suit, dispel such doubt and turn the scales against him.
 

 
 *477
 
 This was the conclusion reached by the Court of Appeal after an exhaustive review of all the testimony of the lay and expert witnesses.
 

 The district court allowed plaintiff $100 for medical expenses. This was apparently to cover the bill of Dr. Jones, which was proved. Plaintiff summoned five other physicians as experts, and now asks that each be ordered paid a fee of $25. These did not treat plaintiff, but merely examined him and testified at the trial.
 

 Paragraph 5, subsec. 2 (K), § 8, Act No. 242 of 1928, p. 357, provides that in every case coming under this act the employer shall “furnish reasonable medical, surgical and hospital services and medicines not to exceed $250.00 in value, unless the employee refuses to allow them to be furnished by the employer.”
 

 Clearly this refers to medical “services” in the nature of attention and treatment administered to the injured employee, and not to the fees of medical experts called for the purpose of the trial. Such fees, if allowed at all, should be taxed as costs.
 

 For the reasons assigned, the judgment of the Court of Appeal is reversed and it is now ordered that there be judgment in favor of the plaintiff, Douglas Jones, and against defendants, G. R. Hunsicker and Central Surety & Insurance Corporation in solido, in the sum of $14.56 compensation for one week, together with 5 per cent, per annum interest from the date of demand until paid, and in the further sum of $100 for medical expenses. And it is further ordered that defendants pay all costs.
 

 HIGGINS, J., takes no part.