MILLER, Judge.
Plaintiff, Lloyd Landry, sued defendant, Bituminous Casualty Company for workmen’s compensation at the rate of $45.00 per week beginning April 21, 1969 for 500 weeks, arising out of dual accidents which *107 happened on April 21, and April 22, 1969. Defendant Bituminous filed a third-party suit against Fluor Corporation and its insurer, American Motorist Insurance Corporation, alleging that if the plaintiff is currently disabled it was the result of an accident occurring on November 5, 1969 while plaintiff was in the employ of third-party defendant, Fluor Corporation. Plaintiff subsequently amended his original petition to include Fluor Corporation and American Motorist Insurance Corporation as original defendants.
The trial judge granted judgment in favor of plaintiff and against defendant, Bituminous, awarding plaintiff compensation at the rate of $45.00 per week beginning April 21, 1969 not to exceed 500 weeks, subject to credit for compensation previously paid, together with penalties on the sums of $996.43, $517.50 and all sums not paid to date, and $2,000.00 attorney’s fees. Defendant Bituminous was also cast with medical expenses and court costs. The trial court rendered judgment in favor of Fluor Corporation and American Motorist Insurance Company rejecting the demands of plaintiff, Landry, and third-party plaintiff, Bituminous. Defendant Bituminous appeals to this Court.
On April 21, 1969 plaintiff, Lloyd Landry, was employed by Henry Brothers, Inc. in Calcasieu Parish as an ironworker, and Bituminous was the workmen’s compensation insurer of Henry Brothers, Inc. On that date a piece of plywood which was being used as a sun and rain shield fell from its scaffold and struck plaintiff on the back of the head and neck. The following day the identical accident occurred again. Plaintiff continued working and on May 6, 1969 he consulted Dr. George Schneider, orthopedic surgeon of Lake Charles. Dr. Schneider prescribed conservative treatment and plaintiff continued to work until approximately May 16, 1969 when his symptoms intensified and he was hospitalized by Dr. Schneider. After he left the hospital, plaintiff continued under Dr. Schneider’s care until he was pronounced
able to return to “light duty” on August 5, 1969. Plaintiff obtained employment as an ironworker with Port City Construction Company in Lake Arthur, Louisiana, but was stricken with a recurring stomach disorder and hospitalized at the Veterans Administration Hospital for approximately one month from the middle of September to the middle of October, 1969. The stomach disorder is admittedly unrelated to this case.
Upon his discharge from the V.A. Hospital plaintiff secured employment with defendant, Fluor Corporation, as an iron-worker-welder on a construction job in Calcasieu Parish. While so engaged on November 5, 1969, plaintiff was using a 2x4 board to straighten or align some steel rods in the process of plumbing a wall, when he claifns to have sustained a second accident.
There are 4 issues: 1) Did plaintiff sustain a second accident on November 5, 1969 ? 2) Is plaintiff presently disabled? 3) Should there be penalties and attorney’s fees and against whom? 4) Is Dr. Rafes’ $150.00 charge for his deposition excessive?
The question of a second accident is the principal issue. In rejecting the claim of a second accident on November 5, 1969, the trial judge stressed the fact that three of the four witnesses plaintiff claims to have told of the November 5 accident, testified that he told them of no such accident. The fourth witness testified that there was such an accident but the trial judge was not impressed with his testimony. By coincidence the plaintiff gave a deposition several hours after the November 5, 1969 incident in which he testified as follows:
“I haven’t tried to strain very much, but like today I was trying to plumb a wall over there, and we needed to push it over, somé of it needed to be shoved, so I got a two by and plaqed it against the iron bar and I was shoving on it, and all of a sudden the pain just hit me like that in the neck and I got very weak.”
*108 The trial judge reasoned that plaintiff was merely citing this incident as an example of the trouble he was having during his light duty work and concluded that this was not an accident within the contemplation of the workmen’s compensation act.
At first blush it would appear that this was merely an example of the difficulty plaintiff was having. It is also true that three of the four witnesses testified that plaintiff had not reported an accident to them on November 5, 1969. However, we find that an analysis of plaintiff’s testimony on this and other occasions coupled with the doctors’ testimony, particularly that of Dr. Schneider, and a closer analysis of the three so-called negative witnesses, convinces us that other facts do corroborate the existence of this incident as a second accident.
One of plaintiff’s fellow employees, Perry Le Bleu, testified that plaintiff mentioned to him that he had hurt himself on November 5, 1969 when he was attempting to plumb the wall. Le Bleu noticed that the plaintiff held his head sideways and that he was sick at his. stomach. While it is true that plaintiff’s other fellow employees, Bernette Clark, James Braswell, and Lonce Lanier, each testified that plaintiff did not mention he had been hurt in an accident on November 5, 1969 all three admitted that plaintiff told them he had to go to see the doctor.
Plaintiff testified on three different occasions, twice by deposition and once on the trial of the case and throughout his testimony it is evident that the incident of November 5, 1969 was more than a run of the mill pain in the neck. At the trial the plaintiff described the November 5 incident as follows:
“Well, this day we were plumbing this wall, and I picked up a two by, about five or six feet long, to give a little push on it from left to right; and when I did there was a very severe pain started from the bottom of my neck here and went to my head. And then I got very weak and nauseauted at my stomach. And, then I sat down on the pier there for a while. I had the feeling like I was going to pass out.”
Plaintiff went on to testify that his condition got worse after this incident.
Upon questioning by defendant Fluor’s attorney plaintiff gave this response:
“Q. Now, the pain that you got, you say you got in your neck on November Sth before you went to give your deposition in connection with this case when you were working for Fluor, I think you told us about the two by four and you were plumbing a wall, was that a terrific pain too?
“A. It was a very terrific pain, more severe than anything I had while I was working there. In fact it almost knocked me out with the reaction I got with my stomach, the weakness and the — being nauseated.”
Upon being pressed further by counsel for defendant Fluor, plaintiff stated:
“I could have had occasional pain to my head, but it wasn’t something that staggered me like this — this did when I was pushing on the wall. This was — I’m trying to tell you it was different.”
Plaintiff stated that he had “never suffered nothing like that” and that he had not even done any light work since November 5, 1969. In describing the incident of attempting to plumb the wall plaintiff used at various parts of his testimony phrases like “all of a sudden”, “got hurt again on November 5”, “the worse was when I pushed on that wall”, and “flashing pain”. When pressed repeatedly by Fluor’s counsel, plaintiff described the incident as like something “popped loose or tore loose in my neck”.
Plaintiff has been seen by four specialists, including two orthopedic surgeons and two neurosurgeons. Dr. George P. Schneider, othopedic surgeon of Lake Charles, Louisiana, has been the treating physician *109 from the very beginning and is in the best position to characterize plaintiff’s condition and the causes. Dr. Schneider testified that he examined plaintiff on November 6, 1969 and that plaintiff described a “searing type of pain” when he tried to plumb a wall with a 2x4 the previous day. Dr. Schneider noted that there was marked restriction of cervical motion and felt that the change in plaintiff’s condition was such that plaintiff should be referred to a neurosurgeon. Dr. Schneider sent plaintiff to Dr. Earl H. Rafes, neurosurgeon of Beaumont, Texas. Dr. Schneider went on to say that plaintiff “has either had a new injury in a similarly involved area or an aggravation of an old injury by a new injury in his neck as a result of this episode on November S, and I feel that with this other episode it has caused his problem to be more chronic and taking longer to recover and I feel there is a good possibility that he would be much better now at this stage if he hadn’t had the episode of November 5.” Upon being questioned as to whether or not this November 5 incident might not have simply been an accumulation of difficulties rather than a separate incident Dr. Schneider had this to say:
“No, I think the thing that interrupted his course of recovery was this acute episode that took place on the 5th. It might merely have been on, the basis of which you’ve just related to me, that might have been the frosting on the cake, but it certainly was the acute episode that disabled the man at that time.”
Dr. Schneider referred to such things as “injury he sustained in November” and “soft tissue tearing” in referring to the November 5 incident.
It is quite true that Dr. Rafes could find nothing wrong neurologically with the plaintiff but he did find some limitation of motion and his diagnosis was that of a cervical sprain. It is also true that plaintiff left the hospital at Beaumont prematurely and Dr. Rafes was not able to conclude his examination.
In summary the evidence shows that at the time of the November 5, 1969 incident plaintiff had returned to work as an iron-worker-welder and although seemingly on light duty had performed his work to the satisfaction of the union steward and his supervisor. After the November 5, 1969 incident however plaintiff was unable to perform any work and his symptoms intensified significantly.
LSA-R.S. 23:1021 defines an accident as follows:
(1) Accident “means an unexpected or unforseen event happening suddenly or violently, with or without human fault and producing at the same time objective symptoms of an injury * * * ”
It has been held that where the simple exertion of the body itself produces the force whose relative violence causes the injury this is sufficient to constitute an “accident” within the definition of the act. Francis v. Kaiser Aluminum and Chemical Corporation, 225 So.2d 756 (La. App. 4 Cir. 1969); Satterwhite v. Zurich Insurance Company, 199 So.2d 429 (La. App. 1 Cir. 1967). Clearly the November 5, 1969 incident, standing alone, would be sufficient to constitute an accident. It was sufficient to constitute a second accident in this case. It fulfills the requirements of being sudden or violent and it produced instant pain with resulting disability. Defendants, Bituminous and Fluor Corporation and American Motorist are liable in solido for workmen’s compensation as a result of the November 5, 1969 accident. See Stansbury v. National Auto & Cas. Ins. Co., 52 So.2d 300 (La.App. 1 Cir. 1951).
All defendants take the position that plaintiff is no longer disabled. While the duration of his disability may be indefinite and the precise nature of the disability may be in doubt, the medical testimony establishes that plaintiff sustained a cervical sprain from which he is presently disabled from doing the work of an iron-worker and the period of the disability is indefinite.
*110 Dr. John N. Jackson, neurosurgeon of New Orleans was of the opinion that the plaintiff “probably had a bulging disc”. The essence of Dr. Earl Rafes’ testimony was somewhat inconclusive inasmuch as the plaintiff’s premature departure from the hospital precluded a complete analysis and study by Dr. Rafes but he did feel that plaintiff had a cervical’ sprain. Dr. Charles D. Hatchette examined the plaintiff on June 26, 1969 and again on October 16, 1969. This initial diagnosis was that of a straining injury of approximately six months duration. After the second and last visit on October 16, 1969, Dr. Hatch-ette felt that the plaintiff was not having pain and that he should try to return to work although he would expect some mild pain after this particular layoff which should clear up in some three or more months. Dr. Hatchette did not examine plaintiff after the November S, 1969 accident. Dr. Schneider, the treating orthopedic surgeon and in the best position to know, was of the opinion that the plaintiff could not perform the duties of an iron-worker and that the’ period of his disability was indefinite.. This court has held that where the period of disability is uncertain or indefinite the employee will be considered totally and permanently disabled. Mouton v. Habetz, 215 So.2d 363 (La.App. 3 Cir. 1968). The employer is protected by the provisions which permit revision of the judgment after six months. Comeaux v. Ashy Enterprises, Inc., 195 So.2d 752 (La.App. 3 Cir. 1967).
The problem of penalties and at-, torney’s fees which were assessed by the trial judge against the defendant Bituminous is an issue which presents some difficulty, especially in view of our finding that a second accident occurred on November 5, 1969. Defendant Bituminous paid $90.00 compensation on June 3, 1969 for the April 21-22, 1969 injury. The next compensation benefits were not paid to plaintiff until November 21, 1969 at which time they paid $996.43. No further compensation was paid by defendant Bituminous until April 28, 1970 at which time plaintiff was paid compensation on the basis of one-half ((4) of his rate from November 6, 1969 to April 15, 1970.
In order to assess penalties and attorney’s fees it must be shown that the action was arbitrary, capricious and without probable cause. The overall evidence does establish that defendant Bituminous was less than diligent in keeping track of plaintiff’s condition prior to the November 5, 1969 incident. The medical evidence points up the fact that from April 21, 1969 to November 5, 1969 plaintiff was either disabled and not working or doing light work under pain. The action on the part of Bituminous was arbitrary and capricious. After the November 5, 1969 incident there was a legitimate issue as to which defendant was responsible and therefore the action of Fluor and American Motorist was not arbitrary.
Regarding the fourth and final issue, we find the $150.00 witness fee given to Dr. Rafes is excessive and it will be reduced to $50.00.
Accordingly the judgment of the trial court in favor of plaintiff and against defendant Bituminous is affirmed insofar as it awards total permanent disability to plaintiff at the rate of $45.00 per week beginning April 21, 1969 through November 5, 1969. The judgment is reversed insofar as it exonerates Fluor Corporation and American Motorist for the period of disability beginning November 5, 1969 and let there be judgment in favor of plaintiff and against defendants Bituminous and Fluor Corporation and American Motorist in solido for the period beginning November 5, 1969 through the period of plaintiff’s disability not to exceed 500 weeks from April 21, 1969. The judgment of the trial court insofar as it assesses penalties and attorney’s fees against defendant Bituminous is affirmed.
All costs are to be divided equally between defendant Bituminous and defend *111 ants Fluor Corporation and American Motorist one-half (1/2) to defendant Bituminous and one-half (1/2) to defendants Fluor Corporation and American Motorist.
Affirmed in part, amended and affirmed in part and reversed in part.