320 So.2d 319 (1975)
Cleveland CALDWELL
v.
EXXON CORPORATION.
No. 6971.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1975.
*320 Orlando G. Bendana, New Orleans, for plaintiff-appellee.
Bernard J. Caillouet, E. Burt Harris, Richard A. Chopin, New Orleans, for defendant-appellant.
Before SAMUEL, GULOTTA and BEER, JJ.
GULOTTA, Judge.
Defendant appeals from a judgment awarding partial disability benefits to an injured employee who sustained a broken ankle while employed as a service station attendant at defendant's Car Care Center in New Orleans, Louisiana.
On May 17, 1973, plaintiff suffered a nondisplaced fracture of the tip of the lateral malleolus of the left ankle.[1] Treatment by Dr. Arthur J. Axelrod, to whom plaintiff was referred by his employer, required the use of a cast for approximately a three week period, after which time he was required to use a high top leather shoe for support. Caldwell was discharged to return to work on July 21, 1973. He actually returned on July 25, 1973. Plaintiff terminated his employment with Exxon on May 7, 1974. At the time of the trial he was engaged in duties of a similar nature at a Shell service station.
The thrust of defendant's appeal is that the trial judge erred when he concluded that plaintiff suffered any permanent disability. It is defendant's alternative position that if, indeed, plaintiff suffered a partial disability, compensation benefits should be awarded in accordance with the nonscheduled provisions of the act which provide for weekly payments not to exceed 100 weeks. Defendant further contends plaintiff is not entitled to benefits compensable under the scheduled provisions of the act, which provide for payments not to exceed 125 weeks, based on partial disability of the foot. Exxon also finds error in the assessment, as a medical expense, of medical examinations occurring approximately one year after the injury and in preparation for trial. Finally defendant complains that the assessment of an expert's fee for this physician's testimony was error.
Plaintiff, on the other hand, takes the position that the medical evidence supports the trial judge's conclusions that a partial disability of the foot resulted from the fracture of the left ankle and, under the scheduled benefit provisions of the act, plaintiff is entitled to an award for a partial permanent disability of the left foot amounting to benefits not to exceed 125 weeks.
The trial judge found the employee to be functionally disabled in the left ankle, causing pain to radiate into the foot, resulting in a partial disability of the foot. He awarded plaintiff benefits at the rate of $12.50[2] per week for 125 weeks under the scheduled loss provisions of the Workmen's Compensation Act. See LSA-R.S. 23:1221, 4(g) and 4(o).[3] We agree. The *321 record supports the result reached by the trial judge.
Dr. William Fisher, a general surgeon, examined plaintiff on May 16, 1974, and again on May 29. The doctor's examination of plaintiff's left foot and ankle revealed a slightly increased induration (thickening) of the soft tissue over the lateral malleolus (tip of the fibula). Palpations revealed a tenderness over the ankle and foot area. According to x-rays, plaintiff had a well-healed fracture of the distal end of the fibula, slightly above the ankle joint. It was Dr. Fisher's opinion that plaintiff's complaints of pain, requiring him to "hop" on his foot, were related to the injury. The doctor concluded plaintiff had a 1%, 2% or 3% disability of the ankle. According to Dr. Fisher, people over 45 years of age, such as plaintiff (age 50), generally would have a more difficult recovery. Furthermore, it was Dr. Fisher's opinion that plaintiff suffered injury to the adjoining bony structures which extend into the foot.
Dr. Arthur J. Axelrod, a general surgeon, initially examined plaintiff on May 18, 1973. Approximately seven examinations followed, the last being on July 21, 1973. X-rays taken by Dr. Axelrod demonstrated a fracture of the tip of the left lateral malleolus. It is Dr. Axelrod's opinion that this type of fracture would not lead to any permanent disability. However, Dr. Axelrod did recommend a pair of high top leather shoes for the purpose of lending support to plaintiff's ankle. Following plaintiff's purchase of the boots, he continued to complain to Dr. Axelrod of persistent pain. It is Dr. Axelrod's opinion that someone who has suffered an injury severe enough to break a bone can experience pain, from time to time, for as long as a year, without an abnormality in healing or of function. Dr. Axelrod also testified that this type of injury could produce some functional stiffness in the ankle ligaments.
Significantly, after plaintiff's discharge on July 21, 1973, he was not examined again by Dr. Axelrod. According to the doctor, although he had not seen plaintiff since discharge, he had no reason to change his opinion that plaintiff suffered no disability. However, if plaintiff, as late as May, 1974, had returned to Dr. Axelrod with symptoms similar to those described to Dr. Fisher, it is not unreasonable to conclude that Dr. Axelrod would have found a partial disability.
Caldwell testified that before he accident, though occasionally there had been swelling in the toes, he did not have any trouble with his foot, ankle or leg. Plaintiff complains that since the accident, when he wakes in the morning, he has a pain and stiffness in the foot, and he must "hop" around for 45 minutes to an hour before he can walk normally. In the evening, when he returns home from work, he finds it necessary to soak the foot. According to plaintiff, before the injury, he had no difficulty in stooping. Now he cannot because of pain in his toes.
Edward J. Stuart and Jim Armstrong, borh employees of Exxon Corporation, supported the contention that plaintiff suffered no disability. They testified that plaintiff had been a good employee, and upon his return to his job after the accident, Caldwell worked a greater number of hours than he had prior to his injury. Also, they testified that plaintiff had been capable of doing all of his assigned duties.
We do not attach a great deal of significance to a comparison between plaintiff's pre-injury work record and his post-injury work pattern. According to Dr. Fisher, Caldwell suffered minimal disability. Reasonably such slight impairment would not prevent plaintiff from carrying out his assigned *322 duties. A comparison of plaintiff's work records would be of greater significance in a total permanent disability case.
Mrs. Alma Furlough, a friend of plaintiff's, generally corroborated Caldwell's testimony.
The conclusion reached by the trial judge that plaintiff suffered a partial disability of the foot as a result of the May 7, 1973 accident is a credibility determination. Firmly engrained in our jurisprudence and not requiring citation is the rule that on credibility questions, great weight must be given to the findings of fact of the trial court, and those findings will not be disturbed absent manifest error. We find no such error. The record supports the conclusion of the trial judge that plaintiff suffered a partial disability of the foot.[4]
We reject defendant's contention that workmen's compensation benefits resulting from a broken ankle come under the purview of the nonscheduled provisions of the Louisiana Workmen's Compensation Statute, specifically LSA-R.S. 23:1221(4) (p),[5] and not under the scheduled benefits which provide for a disability of the foot. Dr. Fisher testified that the injury to plaintiff's ankle resulted in a disability to his foot. Therefore, an award of 125 weeks compensation under the scheduled benefit provisions of the act was not error.
We reject also the contention that the trial judge erred in awarding an expert's fee to Dr. Fisher. The opinion testimony given by the doctor justifies the payment and assessment of an expert's fee. Berry v. Higgins, Inc., 136 So.2d 170 (La. App., 4th Cir. 1962); Tyler v. Owens Illinois, Inc., 289 So.2d 893 (La.App., 4th Cir. 1974).
Finally, we do find merit in defendant's contention that the trial court erred in ordering payment of medical expenses of $50.00 to Dr. William Fisher and $36.00 to Dr. Joseph Hopkins, a radiologist to whom plaintiff was referred by Dr. Fisher. Dr. Fisher testified that his visit with plaintiff consisted primarily of an examination and evaluation for trial purposes. Since the examinations were obtained in preparation for trial, the cost of these examinations is not properly assessable as a medical expense in a workmen's compensation case. See LSA-R.S. 23:1203; Cummings v. Albert, 86 So.2d 727 (La.App., 1st Cir. 1955); Jones v. Hunsicker, 188 La. 468, 177 So. 576 (1937). See also Baturo v. Employers' Liability Assurance Corp., 149 So.2d 627 (La.App., 4th Cir. 1963).
*323 For the reasons assigned, that part of the judgment appealed from which awards plaintiff $86.00 for the cost of medical examinations by Drs. Fisher and Hopkins is annulled and set aside. In all other respects the judgment is affirmed. Costs in this court are to be paid by the defendant-appellant.
Annulled and set aside in part; affirmed in part.
BEER, Judge (concurring).
I concur in the result, agreeing with the majority's view that the conclusion reached by the trial judge falls into the category of a credibility determination that is not "manifestly in error." Yet, I believe that this opinion indicates a drift toward a rocky reef.
Mr. Caldwell was discharged from the care of his treating physician on July 21, 1973 and certified able to return to full and unrestricted employment at the same job. He did return and worked without interruption or restriction until he left of his own accord almost a year later. Prior to discharge, the treating physician found him free of any disability whatsoever. However, almost a year later a medical witness who is not even recognized by us as being entitled to have his bill taxed either as costs or as a properly assessable medical expense reports that Mr. Caldwell has a "one percent, possibly twoat the most, maybe three" percent disability of the ankle. And, if one carefully reads his testimony it appears obvious that the first thought on his part was to categorize the disability at one percent; the "possibly twoat the most, maybe three" being added as an afterthoughtperhaps with the realization that a "one percent disability" sounded somewhat ludicrous.
I believe that the principle of de minimis non curat lex should apply to an alleged disability of one percent. I acknowledge that the applicability of the doctrine must give way just as soon as the alleged disability becomes identifiable to some seriously recognizable degree but I doubt that is the case here. Mr. Caldwell is entitled to full disability payments during the time he is actually disabled but this kind of award has the appearance, in my opinion, of "lagniappe." It portends a dangerous tendency which could, if it persists unchecked, do have to the basic concept of the workmen's compensation act. I need not dwell on the possibilities of abusethey are too clearly discernible.
Having signaled my fear that we are standing into danger, I respectfully concur.
NOTES
[1] End of fibula slightly above the ankle joint.
[2] Minimum Compensation as provided for in LSA-R.S. 23:1202 is applicable in the instant case. See Act 25 § 2 of the Extraordinary Session of 1968.
[3] LSA-R.S. 23:1221, in pertinent part, reads as follows:

"Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
"* * *
"(4) In the following cases the compensation shall be as follows:
"* * *
"(g) For the loss of a foot, sixty-five per centum of wages during one hundred and twenty-five weeks.
"* * *
"(o) In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member."
[4] Defendant contends that a suit for workmen's compensation benefits resulting from a broken ankle comes under the purview of the nonscheduled provision of the Louisiana Workmen's Compensation Statute, specifically LSA-R.S. 23:1221(4) (p). Brown v. Liberty Mutual Insurance Co., 239 So.2d 711 (La. App., 1st Cir. 1970). However, in oral argument, counsel for defendant readily admitted that each case must be decided on its own particular circumstances.

In Berry v. Higgins, Inc., 136 So.2d 170 (La. App., 4th Cir. 1962), an ankle fracture sustained by a ship's carpenter resulted in a permanent partial disability of the leg. In Berry, plaintiff recovered workmen's compensation benefits under the scheduled provisions of the Act.
In Hall v. Pipe Line Service Corporation, 233 La. 821, 98 So.2d 202 (1957), a workman suffered some degree of permanent partial loss of the function of his left foot as a result of severing his Achilles tendon in the lower portion of his left leg. Plaintiff was permitted to recover under the scheduled portion of the Act for permanent partial loss of the use or function of the foot.
[5] LSA-R.S. 23:1221(4)(p) reads as follows:

"In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks."