350 So.2d 183 (1977)
CONTINENTAL INSURANCE COMPANY and National Corporation Service, Inc.
v.
FIREMAN'S FUND INSURANCE COMPANY and Plywood Panels, Inc.
No. 7839.
Court of Appeal of Louisiana, Fourth Circuit.
August 5, 1977.
Rehearing Denied October 12, 1977.
*184 Drury, Lozes & Curry, Robert H. Wood, Jr., New Orleans, for plaintiffs-appellants.
Porteous, Toledano, Hainkel & Johnson, James L. Donovan, New Orleans, for defendants-appellants.
Before LEMMON, STOULIG and BOUTALL, JJ.
LEMMON, Judge.
This is a contest between two insurers over liability for workmen's compensation benefits being paid to Alphonse White, a Pendleton Detectives' employee who was injured on the job while working undercover as a plant employee of Plywood Panels, Inc. Pendleton's insurer instituted payment of benefits and then filed this suit to recover all or part of the payments from Plywood's insurer. The trial court ruled that Plywood's insurer was liable for 50% of the benefits due and paid or to be paid, and both insurers appealed.
In August, 1973 Plywood, who had been experiencing employee dissension and losses through employee theft, contacted Pendleton to furnish an agent to work in Plywood's plant and covertly observe employee activities. Pendleton hired White for this assignment and sent him to Plywood, who placed him on the payroll as a laborer. As in the case of other undercover agents furnished by Pendleton for similar purposes, White was required to join the union and to pay the union initiation fee and monthly dues, to perform all of the employment duties required of other employees in the same job classification, and additionally to submit reports to Pendleton of each work shift as to unusual incidents or suspicious activities.
White worked a regular 40-hour week on shift work, plus overtime. His undercover operation was known only to a few Plywood officials, and even his production foreman was not aware of his dual status. In fact several other Pendleton agents were working undercover for Plywood at the same time.
In October, 1973 Plywood posted notice of a job opening for a printer operator, and through normal union bidding procedures White signed for and secured the higher paying position. As an operator White worked regular shift hours and performed all duties of an operator in addition to his undercover work and daily reports thereof.
While he was working as a laborer, White was paid weekly by Plywood at the union contract rate of $2.10 per hour for regular time. Pendleton also paid White 40 cents per hour (for regular time only) in order to bring his salary to $2.50 per hour, Pendleton's standard rate for undercover agents, *185 and $3.00 per daily report. Each employer handled social security and F.I.C.A. contributions as to these salary payments.
In addition to the $2.10 per hour paid to White, Plywood paid $3.90 per hour to Pendleton, who supervised the overall operation and furnished daily coordination and instruction to White. Thus, the total cost to Plywood was $6.00 per hour, and Pendleton received $3.50 per hour in excess of the 40-cent salary supplement it paid to White.
After his promotion to operator White was paid by Plywood at the union contract rate of $2.80 per hour. Pendleton continued paying him $3.00 per daily report, but discontinued the 40-cent salary supplement, since White's salary with Plywood was then over the $2.50 minimum for Pendleton's undercover agents. Moreover, Pendleton continued to receive $3.50 per hour net from Plywood, thus increasing the total cost to Plywood to $6.30 per hour.[1]
White was injured on the job in April, 1974, when while cleaning the cylinder his hand slipped between two moving rollers. Prior to the injury Plywood and Pendleton had neither agreed to nor discussed workmen's compensation liability.
As to the employee, both employers are solidarily liable for workmen's compensation benefits. Each employer had an employment contract with the employee, each exercised some degree of control over the employee, and at the time of the injury the employee was simultaneously performing services for both employers. Neither employer had a full interest in the services being performed, and one could not reasonably conclude on this record that only one employer was being served at the time of the injury. Therefore, the employee could recover from either employer.
As to liability between employers, however, more difficult questions are presented. Specifically involved in this case are the issues of whether the solidary liability should be apportioned, and, if so, in what proportions.
On the liability of joint employers R.S. 23:1031 provides in pertinent part:
"In case any employee for whose injury or death payments are due is, at the time of the injury, employed and paid jointly by two or more employers subject to the provisions of this Chapter, such employers shall contribute to such payments in proportion to their several wage liabilities to the employee; but nothing in this section shall prevent any arrangement between the employers for different distribution, as between themselves, of the ultimate burden of such payments."
Thus, in the case of joint employers, where there has been no agreement as to compensation liability, R.S. 23:1031 requires payment in proportion of "their several wage liabilities to the employee" at the time the injury occurred.
At the time of this accident White was actually receiving $112.00 per week from Plywood and $15.00 per week from Pendleton, or a total of $127.00 per week. But from a practical standpoint, because Plywood ultimately paid for all of White's services, it matters little who actually disbursed the salary. Under R.S. 23:1031 the key inquiry is the liability of each joint employer and not the amount of actual payment by each.
Each employer had a separate employment contract with White.[2] Plywood's respective wage liability was $112.00 per week under their contract. Moreover, Plywood *186 received the full services for which this salary was paid.[3] Indeed, if White had not performed these services as a printer operator, Plywood would have had to employ someone else at the same salary in order to maintain the same level of operation.
On the other hand, White was primarily hired as an undercover investigator, and Pendleton's respective wage liability to White under their separate employment contract was $100.00 per week for that work, plus $15.00 per week for reports. While Pendleton was actually relieved of paying the $100.00 weekly salary because Plywood paid White in excess of $2.50 per hour for performing services as a printer operator while observing employee activities as part of the investigation, this amount was still part of Pendleton's wage liability at the time of the accident.
Therefore, to the extent of the first $100.00 of White's weekly wages, each employer was jointly liable.[4] Plywood was also solely liable for an additional $12.00 (for the 30-cent per hour excess of the salary of a printer operator over the salary of an undercover agent), and Pendleton was solely liable for an additional $15.00 per week (for reports). By dividing the joint liability for the first $100.00 equally, we calculate the proration as between employers according to their several wage liabilities for the $127.00 weekly wages as follows:

 Pendleton - $50.00 + $15.00 51.2%
 _______________ or
 $127.00
 Plywood - $50.00 + $12.00 48.8%
 _______________ or
 $127.00

For these reasons the judgment of the trial court is amended to fix liability for benefits due, as between employers at 51.2% for plaintiffs and 48.8% for defendants. As amended, the judgment is affirmed.

AMENDED AND AFFIRMED.
NOTES
[1] The record does not show the exact monetary terms of the Plywood-Pendleton contract nor the considerations involved in the negotiation of these terms. The fact remains, however, that Pendleton received a constant sum of $3.50 per hour in excess of the minimum salary guaranteed by Pendleton to the employee.
[2] In the determination of each employer's wage liability to White, it was of little consequence that Plywood also paid Pendleton an "override" of $3.50 per hour for furnishing an investigative agent and supervising and coordinating his operation. The Plywood-Pendleton contract for furnishing total services is not determinative in this case of the employers' "several wage liabilities to the employee" under R.S. 23:1031, the statute which specifies the method of apportioning compensation contribution.
[3] While the consideration of services received by the employer is more important in determining solidary liability as to the employee, that factor may also be involved in the determination of the proportionate wage liability of each employer to the employee.
[4] Indeed, if White had not been paid, he could have recovered wages to this extent from either employer.