493 So.2d 611 (1986)
Jessie GALES
v.
GOLD BOND BUILDING PRODUCTS, a DIVISION OF NATIONAL GYPSUM CO., and the Kemper Group.
No. 85-C-1351.
Supreme Court of Louisiana.
September 8, 1986.
Rehearing Denied October 9, 1986.
Judith A. DeFraites, Gertler & Gertler, New Orleans, for plaintiff-applicant.
Lawrence K. Benson, Jr., Melanie Miller Lewis, J. Patrick Gaffney, Milling, Benson, Woodward, Hillyer, Pierson & Miller, P.C., New Orleans, for defendant-respondent.
*612 DENNIS, Justice.[*]
The issue presented by this case is whether the obligation to pay workers' compensation binds more than one of a claimant's successive employers when his disabling occupational disease results from his injurious exposure to deleterious causes on successive jobs, and, if so, whether one of the obligors is liable for the whole obligation to the others. In this case the asbestosis claimant filed suit against one, but not the last, of the employers who contributed to his disease. On motion of defendant, the trial court dismissed plaintiff's suit at the end of his case because of his failure to implead the last contributing or causative employer. The court of appeal affirmed. 472 So.2d 82. We reverse. Any employer whose employment of a claimant has contributed causally to his disabling occupational disease is solidarily obliged to him fully for workers' compensation. As between successive employers contributing to an employee's disabling occupational disease, the employer during whose employment the employee was last injuriously exposed to the cause of the occupational disease is fully responsible for all workers' compensation due.

1. Facts
Jessie Gales began work as an asbestos manufacturing worker in 1942 for R.J. Dorn Company at its plant on Tchoupitoulas Street in New Orleans. During his career, he worked at the same plant for several successive employers, until disabled by the disease of asbestosis in 1983. The period during which each company owned the plant and employed Gales was as follows: R.J. Dorn Company 1942 to 1943; Asbestone Corporation, 1943 to 1953; Gold Bond Building Products, a division of National Gypsum Company, 1953 to 1981; International Building Products 1981 to 1983. In 1983, Gales took an early retirement after being diagnosed as having asbestosis.
Gales filed this suit for workers' compensation against Gold Bond in 1983 and trial commenced in 1984. The plaintiff's evidence showed that Gales' employment exposed him to greater than ordinary concentrations of asbestos dust and fibers throughout his career. Although his expert medical witnesses identified his 28 year employment from 1953 to 1981 by Gold Bond as the principal cause of his asbestosis, they also testified that his last two years of employment by International Building Products, Inc., contributed to his occupational disease. At the conclusion of plaintiff's case, defendants filed a motion for involuntary dismissal. The trial court granted the defendant's motion and dismissed plaintiff's claim with prejudice.
The trial court interpreted this court's decision in Carter v. Avondale Shipyards, Inc., 415 So.2d 174 (La.1982) as holding that only the last causative employer may be held liable to an employee disabled by an occupational disease. Because plaintiff's own evidence showed that International Building Products, which plaintiff failed to name as a defendant, was the last causative employer, the suit against Gold Bond was dismissed. Plaintiff appealed, and the court of appeal affirmed.

2. The Issue
We granted certiorari to decide whether more than one successive employer of a worker who contracts a disabling occupational disease may be held liable in solido for workers' compensation to the employee if each employer's work related activity or environment contributed to the disease; and, if so, the nature of the liability of the solidary obligors between themselves.

3. Carter v. Avondale Shipyards, Inc.

Carter v. Avondale Shipyards, Inc., 415 So.2d 174 (La.1982) does not resolve the issue presented by this case. Carter was a contest between two successive employers to determine, as between the employers, whether liability for a worker's occupational disease should be imposed on one employer or apportioned between employers. After initially deciding that liability for compensation benefits should be apportioned *613 between employers whose employments were causative factors in the development of the employee's disease, this court vacated that decision on rehearing, and found that the final employer, Avondale, was solely responsible because it had failed to prove that the employment by the previous employer, Dibert, Bancroft & Ross, had been a causative factor. In dicta, this court suggested that responsibility for compensation of occupational disease victims should be placed only on "employers of the worker at the time the disease `manifested itself' and `disabled' the worker." Carter v. Avondale Shipyards, Inc., supra, p. 181.
Consequently, this court in dicta may have expressed a preference for the last injurious exposure rule in resolving disputes between successive employers over liability for an employee's progressive occupational disease. However, the court was not called upon to decide, and did not decide even in dicta, whether an employee may hold each successive employer whose employment of him was a causative factor in the development of his occupational disease solidarily liable for workers' compensation.

4. The Statute
The workers' compensation act provides for benefits in connection with occupational diseases upon certain terms and conditions. La.R.S. 23:1031.1.[1] Every employee is entitled to compensation for disability caused by occupational disease contracted during *614 employment the same as in the case of personal injury by accident arising out of and in the scope and course of his employment. Id. A. An occupational disease must be due to causes characteristic of the employment in which the employee is exposed. Id. B. There is a rebuttable presumption that any disease contracted within the first twelve months of performing work for an employer is non-occupational. Id. D. To preserve his claim an employee must file it with his employer within six months of the date that the disease manifested itself, the employee is disabled from working as a result of the disease, or the employee knows or has reasonable grounds to believe that the disease is occupationally related. Id. E. An employee who willfully and falsely represents himself as not having previously suffered from a disease upon entering employment is disqualified for benefits as a result of that disease. Id. G. The right to workers' compensation on account of occupational disease is exclusive of all other rights or remedies. Id. H.
With respect to an occupational disease caused by multiple successive employments, the statute is open textured and ambiguous. Its provisions do not clearly state whether each causative employer is obliged to pay compensation, whether a causative employer's obligation is several, joint or solidary, or, if solidary, how the obligors may be liable between themselves. The statute alternately links the employer's obligation with the employee's contraction of or exposure to disease during employment. These passages could be interpreted to refer either to the employee's initial acquisition of the disease, any exposure or contraction of additional diseased conditions or perhaps the final exposure and contraction producing manifest symptoms and ultimately disability. Nothing in the statute specifically precludes any one of the three traditional solutions to the successive employer problem: to hold the first causative employer liable exclusively, to place liability exclusively on the last causative employer, or to make them share in the liability. See, Larson Workmen's Compensation Law, Vol. 4, § 95.12 (1984).

5. Solidarity
Under a proper interpretation of the occupational disease provisions, bearing in mind the policy of liberal statutory construction, the emerging principle of imposition of solidary liability upon multiple employers, and the compromise character of compensation, we conclude that any employer whose employment of a claimant has contributed causally to his disabling occupational disease is solidarily obliged to him fully for workers' compensation.
The policy of liberal construction of the workers' compensation laws for the benefit of the claimant is the rule in Louisiana. Lester v. Southern Casualty Insurance Company, 466 So.2d 25 (La.1985); Danielson v. Security Van Lines, Inc., 158 So.2d 609 (La.1963); Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522 (1956); Jones v. Hunsicker, 188 La. 468, 177 So. 576 (1937).
It is an emerging general principle of our workers' compensation law that, where succeeding employments contribute to disability, compensation liability falls solidarily on each succeeding employer. Thus, it has been held that when a worker is disabled as a result of the combination of two or more successive accidents in separate and succeeding employments each employer is solidarily liable for the total amount of benefits. The employee may, at his option, obtain an award for the entire disability against any one or more of successive employers whose employment contributed to the disability. Finley v. Hardware Mutual Ins. Co., 110 So.2d 583 (La. 1959); Wheat v. Ford, Bacon & Davis Constr. Corp., 424 So.2d 293 (La.App. 1st Cir.1982); Lachney v. Employers Commercial Union Insurance Companies, 337 So.2d 624 (La.App. 4th Cir.1976); Landry v. Bituminous Cas. Co., 244 So.2d 105 (La.App. 3rd Cir.1971); Stockstill v. Bituminous Cas. Co., 144 So.2d 918 (La.App. 4th Cir.1962); Estillette v. United States Fidelity & Guaranty Company Co., 64 So.2d 878 (La.App. 1st Cir.1953); Brock v. Jones Laughlin Supply Co., 39 So.2d 904 *615 (La.App. 1st Cir.1949); White v. Taylor, 5 So.2d 337 (La.App. 2nd Cir.1941); Guillory v. Travelers Insurance Company, 282 So.2d 600 (La.App. 3rd Cir.1973), rev'd on other grounds, 294 So.2d 215 (La.1974); Meche v. Arthur G. McKee & Company, Inc., 415 So.2d 494 (La.App. 1st Cir.1982); Malone & Johnson, supra, Workers' Compensation Law and Practice, 2d ed., § 60 (1980 and supp. 1986) and Malone, Torts & Workmen's Compensation, 20 La.L.Rev. 245, 252 (1960). According to the same principle, when the claimant shows that some indications of an accident appeared on one job, and its final development occurred on another, solidary liability is appropriate because the employment with each employer contributed to the employee's death. Blount v. Cooper Stevedoring Co., 416 So.2d 358 (4th Cir.1982) cert. denied 420 So.2d 457 (La.1982). See Malone & Johnson, Worker's Compensation § 60 (Supp. 1986).
Likewise, in every instance outside the successive employer situation in which a stricken employee has a relationship with more than one employer, our courts have construed the workers' compensation laws to impose solidary liability upon each employer for performance of the compensation obligation whenever there was a rational connection between the employment and disability. An injured worker may recover compensation from either his statutory or direct employer, each being bound solidarily for the entire amount of compensation owed. Jones v. Southern Tupelo Lumber Co., 257 La. 869, 244 So.2d 815 (1971); Travelers Ins. Co. v. Paramount Drilling, 395 So.2d 849 (La.App. 2nd Cir.1981); Miller v. Continental Cas. Co., 146 So.2d 842 (La.App.3rd Cir.1962). Solidary liability for compensation is also imposed on both the general and special employer under the borrowed servant doctrine. Maryland Cas. Co. v. Liberty Mutual Ins. Co., 254 La. 489, 224 So.2d 465 (1969); Humphreys v. Marquette Cas. Co., 103 So.2d 895 (La.1958); Smith v. Kelly Labor Service, 239 So.2d 685 (La.App. 4th Cir.1970); Travelers Ins. Co. v. Paramount Drilling Co., supra. Similarly, solidary liability is imposed for compensation benefits where there are joint employers. Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3rd Cir.1979), cert. denied, 379 So.2d 1102 (La.1980) and Continental Insurance Company v. Fireman's Fund Insurance Company, 350 So.2d 183 (La.App. 4th Cir.1977), or where the employers are engaged in a joint enterprise, McGregor v. United Film Corporation, 351 So.2d 1224 (La.App. 1st Cir.1977), cert. denied 353 So.2d 1335 (La.1978) and Guilbeau v. Liberty Mutual Insurance Company, 324 So.2d 571 (La.App. 1st Cir.1975), affirmed, 338 So.2d 600 (La.1976).
Workers' compensation represents a compromise in which employer and worker each surrender certain advantages in order to gain others more important to him and to society. The employer gives up the immunity he otherwise would enjoy in cases where he is not at fault, and the employee surrenders his former right to full damages and accepts instead a more modest claim for bare essentials, represented by compensation. Malone & Johnson, Workers Comp. § 32. Therefore, the statute should be interpreted with this quid pro quo in mind.
The occupational disease section provides that the rights and remedies granted therein to an employee or his dependent on account of an occupational disease shall be exclusive of all other rights. La.R.S. 23:1031.1. The section may be reasonably construed so as to incorporate the compensation compromise: the employee exchanges damage claims for compensation claims against all previous employers who contributed to his occupational disease; the previous employers strike a reciprocal bargain, and are granted immunity from tort suits. See Lowery v. McCormick Asbestos Co., 300 Md. 28, 475 A.2d 1168 (1984); Farrall v. Armstrong Cork Co., 457 A.2d 763 (Del.App.1983).
If the section is not construed reasonably so as to grant an employee afflicted with occupational disease a workers' compensation action against each employer during *616 whose employment he was injuriously exposed to a cause of the disease, the employee must be allowed to recover full damages from those employers immune from compensation responsibility, or else the employee would have been forced to surrender his right to full damage without a reasonable quid pro quo.
Each of these reasons is sufficient to convince us that the workers' compensation laws should be interpreted, when reasonably possible, to give an employee suffering from an actionable occupational disease the right to demand the whole performance of the compensation obligation from each person whose employment contributed to his disability. Collectively, these principles and policies overwhelmingly persuade us that the legislature has given us no reason to adopt a contrary interpretation which would only tend to thwart a deserving claimant's complete and speedy recovery.

6. Last Injurious Exposure Rule
The conclusion that the successive employers who contribute to an employee's occupational disease are solidarily bound, however, does not alone determine the rights and obligations of the debtors in relation to each other. The Civil Code recognizes that debtors, although solidarily bound for the creditor's benefit, may have differing relationships among themselves. La.C.C. arts. 1804, 1805 and 1806 [old art. nos. 2103, 2104, 2106]; Hoefly v. Gov't Employees Ins. Co., 418 So.2d 575 (La. 1982); 2 M. Planiol, Pt. 1, nos. 767-771 (La.State Law Institute tr. 1959); Wooten v. Wimberly, 272 So.2d 303 (La.1972) (Tate, J., concurring); The Work of the Louisiana Appellate Courts for the 1972-73 Term Obligations, 34 La.L.Rev. 231, 233 (1974), and Comment, Prescribing Solidarity: Contributing to the Indemnity Dilemma, 41 Louisiana Law Review 659 (1981).
This court in Carter v. Avondale Shipyards, Inc., supra, strongly suggested in dicta that the relationship of successive employers with respect to an occupational disease claim is such that, as between themselves, the last obligor during whose employment the employee was injuriously exposed to a cause of disease is liable for the whole compensation obligation. After considering the issue anew, in light of the principles and goals of workers' compensation law, we conclude that the suggestion was a good one, and we now make this version of the last injurious exposure rule a precept of this court, as between successive employers, who are bound in solido to the claimant.
The last injurious exposure rule is the majority rule in successive employer or insurer cases, either by judicial adoption or by express statutory provision. Larson, supra § 95.20. It has been utilized in occupational disease cases including those involving asbestosis, silicosis, pneumoconiosis, tuberculosis, arthritis, dermatitis, occupational loss of hearing, and various other diseases produced by inhalation of chemicals and fumes. Id. at § 95.24. The last injurious exposure is particularly useful for allocating liability in occupational disease cases, which often involve a number of employers and insurers. Id.
The rule avoids the necessity for identification of all employers and insurers as well as the assessment of the proportion of exposure during each employment and thereby prevents frequent and protracted delays in payments to claimants. See, Lowery v. McCormick Asbestos Company, 300 Md. 28, 475 A.2d 1168, 1174 (1984); Inkley v. Forest Fiber Products Company, 288 Or. 337, 605 P.2d 1175 (1980) and Larson, supra, § 95.24. Most courts have felt constrained to interpret the workers' compensation laws to adopt such a rule so as to best serve the interests of employees who suffer from occupational disease, rather than to attempt an adjustment of their rights in the light of equities that may exist between successive employers. See Wilson v. Van Burner County, 198 Tenn. 179, 278 S.W.2d 685 (Tenn.1955). Even though the liability imposed under this rule can have a harsh result in a particular case, it is believed that there will be a spreading of the risk when the total picture of occupational *617 disease litigation is considered on an industry-wide, long term basis. Osteen v. A.C. & S., Inc., 209 Neb. 282, 307 N.W.2d 514 (1981); Cordero v. Triple A Machine Shop, 580 F.2d 1331 (9th Cir. 1978); Travelers Insurance Company v. Cardillo, 225 F.2d 137 (2nd Cir.1955); Lowery, supra; and Larson, supra, § 95.24.
Another possible solution to the successive employer or carrier problem would be to apportion liability among all causative employers and their insurers on the basis of the employee's proportionate exposure to causative factors during each employment or coverage. As Professor Larson observes, this "would be the ideal theory in a perfect world, i.e., a world in which all previous insurers were within the jurisdiction of the board, and the proportion of disability which occurred when each was at risk could be easily measured." Larson § 95.12 (footnotes omitted). In summing up the problems and complications of the apportionment solution, he states:
Obviously, however, this isn't a perfect world and apportioning liability is complicated by such problems as out-of-state employers, statutes of limitations, and the difficulty of determining the proportion of liability attributable to each insurer. This latter problem is further complicated by the necessity of determining whothe insurers or the employeeis to bear the burden of establishing the basis for apportionment. Nonetheless, apportionment is a frequently used solution.
See also, Osteen v. A.C. & S., Inc., 209 Neb. 282, 307 N.W.2d 514, 519 (1981); Tennessee Tufting Company v. Potter, 337 S.W.2d 601, 602 (Tenn.1960); Employers Mutual Liability Insurance Company v. McCormick, 195 Wis. 410, 217 N.W. 738, 742 (1928); and Mathis v. State Accident Insurance Fund, 10 Or.App. 139, 499 P.2d 1331 (1972).
The last injurious exposure rule avoids most of the problems of the apportionment solution and because of this promotes efficient administration, speedy payment of claims, and, in most instances, provides the highest level of benefits for the claimant. Larson § 95.20 N. 15. For all of the reasons mentioned, we conclude that, as between the successive employers themselves, the solution of assigning liability according to the last injurious exposure most effectively furthers the principles and goals of workers' compensation laws.

CONCLUSION
In occupational disease cases under the workers' compensation laws involving successive employers, an employer whose employment of a claimant has contributed causally to his disabling occupational disease is solidarily obliged to him for the whole obligation to pay workers' compensation. As between successive employers contributing to an employee's disabling occupational disease, the employer during whose employment the employee was last injuriously exposed to a cause of the occupational disease is fully responsible for all workers' compensation.
The judgment of the court of appeal and the ruling of the trial court are reversed and the case is remanded to the trial court for further proceedings consistent with this opinion. All costs are charged to the respondent.
REVERSED AND REMANDED.
LEMMON, J., concurs in the decision that defendant is solidarily liable for workman's compensation, but dissents from adopting the last injurious exposure rule for the reasons expressed on original hearing in Carter v. Avondale Shipyards, Inc., 415 So.2d 174 (La.1982).
NOTES
[*] Blanche, J., retired, participated in this case ad hoc, in place of Cole, J., the matter having been heard and submitted before Justice Cole replaced Justice Blanche on the Court.
[1] La.R.S. 23:1031.1 provides:

A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease shall mean only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.
C. [This subsection details special rules applicable to laboratory technicians.]
D. Any occupational disease as herein listed contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall be compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by an overwhelming preponderance of evidence.
E. All claims for disability arising from an occupational disease are barred unless the employee files a claim with his employer within six months of the date that:
(a) The disease manifested itself.
(b) The employee is disabled from working as a result of the disease.
(c) The employee knows or has reasonable grounds to believe that the disease is occupationally related.
Notice filed with the compensation insurer of such employer shall constitute a claim as required herein.
F. All claims for death arising from an occupational disease are barred unless the dependent or dependents as set out herein file a claim with the deceased's employer within six months of the date of death of such employee or within six months of the date the claimant has reasonable grounds to believe that the death resulted from an occupational disease. Notice filed with the compensation insurer of such employer shall constitute a claim as required herein.
G. Compensation shall not be payable hereunder to an employee or his dependents on account of disability or death arising from disease suffered by an employee who, at the time of entering into the employment from which the disease is claimed to have resulted, shall have willfully and falsely represented himself as not having previously suffered from such disease.
H. The rights and remedies herein granted to an employee or his dependent on account of an occupational disease for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents or relatives.
I. Notice of the time limitation in which claims may be filed for occupational disease or death resulting from occupational disease shall be posted by the employer at some convenient and conspicuous point about the place of business. If the employer fails to post this notice, the time in which a claim may be filed shall be extended for an additional six months.